*Court of Appeals*
*Fourth Court of Appeals District of Texas*
*San Antonio*



# OPINION

No. 04-10-00050-CR

Irene V. **RODRIGUEZ**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 381st Judicial District Court, Starr County, Texas
Trial Court No. 08-CR-89
Honorable Jose Luis Garza, Judge Presiding

Opinion by:     Sandee Bryan Marion, Justice

Sitting:        Catherine Stone, Chief Justice
                Sandee Bryan Marion, Justice
                Steven C. Hilbig, Justice (concurring in the judgment only)

Delivered and Filed:  December 15, 2010

AFFIRMED

Appellant, Irene V. Rodriguez, is a notary public.  A jury found appellant guilty of holding herself out as an attorney, and the trial court assessed punishment at ten years' confinement, probated, and a $1,000 fine.  On appeal, appellant challenges the legal and factual sufficiency of the evidence in support of the verdict, and she asserts the trial court erred in overruling her motion for new trial.  We affirm.

## SUFFICIENCY OF THE EVIDENCE

The indictment alleged appellant "with intent to obtain an economic benefit for herself held herself out as a lawyer, to-wit: by stating that she was a lawyer that knew how to process immigration applications, and [she] was not then and there licensed to practice law in this state, another state or foreign country." Appellant asserts the evidence is legally insufficient because the State failed to offer any evidence that she held herself out as a lawyer who "knew how to process immigration applications," and the State failed to offer any evidence that she committed the relevant conduct with the intent to obtain an economic benefit for herself. Appellant asserts the evidence is factually insufficient because the great weight and preponderance of the contrary evidence demonstrates the jury's verdict was clearly wrong and manifestly unjust.

There is "no meaningful distinction between the *Jackson v. Virginia* legal-sufficiency standard and the *Clewis* factual-sufficiency standard." *See Brooks v. State*, No. PD-0210-09, 2010 WL 3894613, at *8, 14 (Tex. Crim. App. Oct. 6, 2010) (overruling *Clewis*). Accordingly, we will apply the same standard of review to all of appellant's sufficiency complaints. That standard requires us to determine whether after considering all the evidence in the light most favorable to the verdict was a jury rationally justified in finding guilt beyond a reasonable doubt. *Id.* at *8. The standard of review is the same in both direct and circumstantial evidence cases. *Kutzner v. State*, 994 S.W.2d 180, 184 (Tex. Crim. App. 1999).

### A.      Holding Herself Out As a Lawyer

Appellant is a notary public who maintains an office in Rio Grande City, Texas. She is not an attorney. Genaro Esparza testified he went to see appellant at her office in March 2000 because he needed help with immigration proceedings for his wife and children. Esparza said he did not know anything about immigration and a friend of his told him appellant was an attorney.

He stated that when he first met with appellant and told her he needed immigration help, appellant told him she could help, "that she was an attorney and that she was authorized to work on immigration papers." Esparza continued to consider appellant his attorney through 2006 because she told him she was an attorney when they first met. In May 2005, Esparza went to speak with appellant because his son's visa had expired and the visas held by his wife and other children were going to expire. Appellant told him "we were going to need more money." When Esparza went home and told his family about this conversation, his family cautioned him that appellant was not an attorney. Later, Esparza expressed this concern to appellant and, according to Esparza, appellant "told [him] she was an attorney and she gave me this [business] card so that I could be at ease." The business card does not state appellant is an attorney, but instead, reads: "Rodriguez Immigration & Office Services." In January 2006, Esparza decided to terminate the relationship with appellant. He went to her office and asked for his paperwork, which she refused to provide. When he made a second visit to her office, she gave him his documentation. He did not look for another attorney to help him because he had no money.

On appeal, appellant concedes this evidence provides some proof for a portion of the indictment's allegation; but, she contends there is no proof that she *stated* she was a lawyer who knew how to *process* immigration applications. According to appellant, the *processing* of immigration applications falls within the sole discretion of the United States government. Therefore, appellant contends there is no evidence to suggest she held herself out as a lawyer in the manner alleged in the indictment.

We disagree with appellant's argument that failure to prove she actually stated she was a lawyer who "knew how to process immigration forms" rendered the evidence insufficient. "[W]hen faced with a sufficiency of the evidence claim based upon a variance between the

indictment and the proof, only a 'material' variance will render the evidence insufficient." *Gollihar v. State*, 46 S.W.3d 243, 257 (Tex. Crim. App. 2001). This is because the sufficiency of the evidence is measured by a hypothetically correct jury charge, and the hypothetically correct jury charge "will take into consideration the fatal variance doctrine and . . . [a]llegations giving rise to immaterial variances may be disregarded in the hypothetically correct charge." *Id.*; *see also Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997) (holding sufficiency of evidence is measured by hypothetically correct jury charge). A hypothetically correct charge "would be one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability and adequately describes the particular offense for which the defendant was tried." *Malik*, 953 S.W.2d at 240.

Here, the essential elements of the charged offense are: (1) a person, not "currently licensed to practice law in this state, another state, or a foreign country and [who is not] in good standing with the State Bar of Texas and the state bar or licensing authority of any and all other states and foreign countries," "with intent to obtain an economic benefit for" herself, (2) held "herself out as a lawyer." TEX. PENAL CODE ANN. § 38.122(a) (West 2003). The manner or means by which a person holds herself out as a lawyer—in this case, as someone who can process immigration forms—is not material and, therefore, would not be included in a hypothetically correct charge. Accordingly, the State was not required to prove appellant actually stated she was a lawyer who processed immigration forms.

Appellant also contends the overwhelming weight of the following evidence is contrary to the verdict. Appellant submitted into evidence a copy of a form signed by Esparza's wife on April 9, 2003, which was written in Spanish and stated, in part, that "[t]his office is *not*

responsible for any type of legal representation or legal service." Michael Aguirre, an assistant attorney general with the Texas Attorney General's office, testified appellant was the defendant in a lawsuit filed by the AG's office in 2007. Prior to that suit, the AG's office conducted an investigation of appellant, pursuant to which the AG's office confirmed appellant was not an attorney licensed in Texas, another state, or another country. Aguirre stated that in Mexico a "notario publico" is a licensed attorney; therefore, to prevent confusion among Spanish-speaking individuals, a notary public in Texas is not allowed to advertise as a "notario publico." Aguirre said his investigation did not reveal that appellant advertised as a "notario publico," nor did the building outside her office have any signage indicating she was an attorney. When asked if he had ever seen a document that appellant signed "as a lawyer," he responded that he had. Aguirre thought the document was an immigration form sent to the INS and, although he could not recall the precise language on the form, he thought the form included a clause "that states attorney represents - - representing you" and it had appellant's notary stamp. Aguirre agreed one does not have to be a lawyer to fill out an immigration form, but it is against the law in Texas for a notary public to complete an immigration form.

Rozanne Lopez, an investigator for the AG's office, testified she made an appointment with appellant under an assumed name and carrying a hidden audio/video recorder. In late 2005 and early 2006, she met with appellant under the pretext of being married to a man who was a naturalized citizen who had a brother living in Mexico trying to get into the United States. She paid a $20.00 fee for an initial consultation. Appellant told Lopez how the process worked, that she (appellant) would prepare the documentation, and file the documents with INS. While Lopez was waiting in the lobby of appellant's office, she heard some people ask to "speak to the

licenciada Irene Rodriguez."[1] She said the lobby wall had several framed letters "from people [for whom appellant] had provided an immigration service," and thanking her for services provided. However, Lopez said there were no signs using the words "notario publico" or indicating appellant was a lawyer or that she was offering legal advice.

Once inside appellant's office, Lopez said there was a plaque on the wall behind where appellant sat stating in English that she was not a lawyer. Lopez asked appellant about a divorce and appellant said she did not handle divorces and she could refer Lopez to a lawyer. When Lopez asked appellant about preparing a will, appellant told her the forms could be printed out and she (Lopez) could complete the form. Lopez said none of the documents recovered from appellant's office indicated she was a "notario publico," a lawyer, or offering legal services.

However, "the jury is the exclusive judge of the credibility of witnesses and of the weight to be given testimony, and it is also the exclusive province of the jury to reconcile conflicts in the evidence." *Wesbrook v. State*, 29 S.W.3d 103, 111 (Tex. Crim. App. 2000). Here, despite the lack of signage stating she was a lawyer or a "notario publico," the jury apparently believed appellant held herself out to Esparanza as an attorney.

**B.     Obtaining a Benefit for Herself**

Appellant next contends the evidence is insufficient because any conduct for which she was paid in 2000 through 2004 fell outside the limitations period,[2] and her 2005 statement that she would "probably" need more money is nothing more than hypothetical speculation and fails to show how any payment of more money placed her in a more advantageous position.

---

[1]  "Licenciado" is Spanish for a "title given to lawyers."

[2]  The felony indictment for this offense had to be brought within three years from the date of the commission of the offense. TEX. CODE CRIM. PROC. ANN. art. 12.01(7) (West Supp. 2010). The indictment, dated April 1, 2008, alleged the offense occurred on or about May 31, 2005.

We do not agree that the State had to prove appellant was placed in a more advantageous position. Texas Penal Code section 38.122 does not define "economic benefit," but section 38.01 defines the term to mean "anything reasonably regarded as an economic gain or advantage, including accepting or offering to accept employment for a fee, accepting or offering to accept a fee, entering into a fee contract, or accepting or agreeing to accept money or anything of value." TEX. PENAL CODE ANN. § 38.01(3). The word "benefit" is defined in the Introductory Provisions of the Penal Code as "anything reasonably regarded as economic gain or advantage, including benefit to any other person in whose welfare the beneficiary is interested." *Id.* § 1.07(a)(7). Therefore, we review the record for evidence of whether appellant held herself out as a lawyer with the intent to obtain an economic gain or advantage.

When Esparanza first met with appellant, he paid a $20.00 consultation fee. After explaining his immigration problems to her, he and appellant agreed he would pay her $2,500 to begin the immigration paperwork; and, between March 2000 and June 2000, he paid the fee in installments. He paid another "consultation fee" in March 2001. At some point in time, Esparanza asked appellant what could be done for "two men of age," and she said that for $450.00 each "she could get . . . a work permit for them." Although the purpose of further payments is not clear from the record, the record indicates that in 2002, appellant was paid a total of $2,070; in 2003, she was paid a total of $1,650; and in 2004, she was paid $30 to "consult" with Esparza's son about his visa. In May 2005, because his son's visa had expired and the visas held by his wife and other children were going to expire, he went again to speak with appellant. Appellant told him "we were going to need more money." This statement indicates appellant did not provide her services for free.

We conclude the evidence is sufficient to establish that appellant intended to obtain an economic benefit for herself by assisting appellant and his family with their immigration proceedings. *Satterwhite v. State*, 979 S.W.2d 626, 628 (Tex. Crim. App. 1998) (holding record reflected appellant intended to obtain economic benefit for himself by representing client).

## IN PARI MATERIA DOCTRINE

In her third issue, appellant argues the doctrine of *in pari materia* barred her conviction on the charged offense. Appellant asserts the Penal Code section under which she was prosecuted is *in pari materia* with a special statute of similar purpose providing for a lesser punishment under the same fact scenario.

We conclude this complaint has been waived because it was not brought to the trial court's attention until appellant filed her amended motion for new trial. To preserve a complaint for review, a party must present a timely request, objection, or motion stating the specific grounds for the desired ruling if such grounds are not apparent from the context of the request, objection, or motion. *See* TEX. R. APP. 33.1(a)(1). In particular, to challenge the substance of an indictment under the *in pari materia* doctrine, a defendant must object before trial to preserve the complaint on appeal. *See* TEX. CODE CRIM. PROC. ANN. art 1.14(b) (Vernon 2005); *see also Short v. State*, 995 S.W.2d 948, 953 (Tex. App.—Fort Worth 1999, pet. ref'd) (holding failure to raise *in pari materia* claim before trial waives the complaint for appellate review).

## JUROR MISCONDUCT

Appellant next contends juror deceptiveness and misconduct deprived her of a fair and impartial trial. During voir dire, the prosecutor asked if anyone knew the appellant. Veronica Trevino, who later became the foreperson, did not respond. Veronica's sister, Leonor Trevino, was a former employee of appellant.

In support of her motion for new trial, appellant attached the affidavit[3] of Ninfa Velasquez, who stated she is acquainted with appellant and attended the criminal trial. Velasquez said Leonor left appellant's employ "on unfavorable terms," and Leonor told her appellant "was too strict with her and she decided to quit her job." Velasquez was "of the belief that because of these unfavorable terms [Leonor] has a natural bias and prejudice against" appellant. Velasquez alleged that "prior to this criminal trial . . . Leonor spoke against the case, against [appellant], and that she was hoping the case would go against" appellant. She described Veronica and Leonor as a "close knit family." She believed "that Veronica had personal inside knowledge of the workings and mechanics of [appellant's] business which influenced Veronica's verdict in this case."

Appellant bore the burden of proving the allegation of juror misconduct. *Hughes v. State*, 24 S.W.3d 833, 842 (Tex. Crim. App. 2000). Neither Velasquez nor Veronica was called as a witness at the new trial hearing. Even if Velasquez's affidavit established bias on the part of Leonor, appellant points to nothing in the record that indicates Veronica held any bias or influenced the other jurors in any way. We cannot speculate as to the prejudice, if any, of the juror in favor of or against appellant.[4] Therefore, based on this record, we conclude appellant did not establish the trial court abused its discretion for denying appellant's motion for new trial on the basis of juror misconduct.

---

[3] Although a trial court may receive evidence by affidavit, the affidavit is not considered evidence unless it is offered into evidence at the hearing on the motion. *Rouse v. State*, 300 S.W.3d 754, 762 (Tex. Crim. App. 2009). Velasquez's affidavit was not offered into evidence during the new trial hearing, and therefore, was not before the trial court. Nevertheless, we consider the merits of appellant's complaint.

[4] At the new trial hearing, appellant's attorney stated he did not have a conversation with Veronica and he agreed with the State's argument that whether Veronica was influenced by her sister would be speculative.

## INEFFECTIVE ASSISTANCE OF COUNSEL

Finally, appellant contends she received ineffective assistance of counsel for a number of reasons. We review an appellant's claim of ineffective assistance of counsel under the well-established standard of review. *See Strickland v. Washington*, 466 U.S. 668, 690 (1984); *Thompson v. State*, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999). A reviewing court cannot speculate as to the reasons why trial counsel acted as he did, rather a reviewing court must presume that the actions were taken as part of a strategic plan for representing the client. *See Young v. State*, 991 S.W.2d 835, 837–38 (Tex. Crim. App. 1999). The appellate record must affirmatively demonstrate the alleged ineffective assistance of counsel. *See Rylander v. State*, 101 S.W.3d 107, 110 (Tex. Crim. App. 2003); *Thompson*, 9 S.W.3d at 813. Generally, the trial record will not suffice to establish an ineffective assistance of counsel claim. *Thompson*, 9 S.W.3d at 813–14. Here, we have the record from the new trial hearing. Although appellant's trial attorney filed an affidavit[5] that was attached to the motion for new trial, counsel did not testify at the hearing.

Appellant first asserts that if this court finds the *in pari materia* argument to have been waived, then counsel was ineffective for failing to raise the objection. This complaint calls for speculation about why counsel did not object. On appeal, appellant contends there could be no possible trial strategy for not objecting because the objection goes to the trial court's jurisdiction. However, we note that no Texas court has yet considered whether the two statutes at issue here are *in pari materia*. "Ignorance of well-defined general laws, statutes and legal propositions is not excusable and such ignorance may lead to a finding of constitutionally deficient assistance of counsel, but the specific legal proposition must be 'well considered and clearly defined.'" *Ex*

---

[5] Counsel's affidavit was not offered into evidence during the new trial hearing, and therefore, was not before the trial court. *See Rouse*, 300 S.W.3d at 762.

*parte Chandler*, 182 S.W.3d 350, 358 (Tex. Crim. App. 2005). It is universally recognized that because "the law is not an exact science and it may shift over time," "an attorney is not liable for an error in judgment on an unsettled proposition of law . . . ." *Id.* "[L]egal advice which only later proves to be incorrect does not normally fall below the objective standard of reasonableness under *Strickland*." *Id.* at 359. "[C]ounsel's performance will be measured against the state of the law in effect during the time of trial and we will not find counsel ineffective where the claimed error is based upon unsettled law." *id.* (citation omitted); *see also Ex parte Smith*, 296 S.W.3d 78, 81 (Tex. Crim. App. 2009) (counsel not ineffective because proper construction of statute was unresolved and unclear). Because no caselaw exists to guide counsel on whether the two statutes are *in pari materia*, we cannot say counsel was ineffective for failing to raise the objection.

Appellant next asserts counsel was ineffective because he failed to object to prejudicial evidence of the Texas Attorney General's civil suit against appellant and because counsel failed to ask for a limiting instruction once the evidence was admitted. When the State called Michael Aguirre to the stand, he was asked how he knew appellant. Aguirre responded that appellant was a "defendant in the lawsuit that the Attorney General filed . . . .," and that he investigated her at that time. Defense counsel did not object. Although defense counsel filed an affidavit, he did not explain his strategy or concede he was ineffective for failing to object or ask for a limiting instruction. This complaint asks the court to speculate about counsel's trial strategy, something we may not do. Also, although appellant complains about Aguirre's testimony, her sufficiency of the evidence argument relies in large part upon the results of the investigation the AG's office conducted for the civil trial.

Appellant next complains counsel was deficient because he did not request a jury charge on limitations.  This complaint again asks for this court to speculate.  Also, appellant has not established she would have been entitled to such an instruction if one had been requested.  Finally, appellant contends counsel's cumulative errors prejudiced her defense.  Because we conclude appellant did not meet her burden of establishing individual instances of ineffective assistance of counsel, we hold that she cannot show an adverse cumulative effect from the actions of trial counsel.  *See Chamberlain v. State*, 998 S.W.2d 230, 238 (Tex. Crim. App. 1999) (while a number of errors may become harmful in their cumulative effect, non-errors cannot become error cumulatively).  Therefore, the trial court did not err in denying appellant's motion for new trial on this basis.

Appellant's other two grounds for complaining of the trial court's denial of her motion for new trial are that the evidence is insufficient and the interests of justice demand a new trial.  Based on the above discussion, we conclude these complaints are without merit.

## CONCLUSION

We overrule appellant's complaints on appeal and affirm the trial court's judgment.

Sandee Bryan Marion, Justice

Publish