

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-12-00055-CR

David **FINO**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 144th Judicial District Court, Bexar County, Texas
Trial Court No. 2010-CR-11172
The Honorable Angus McGinty, Judge Presiding

Opinion by:    Karen Angelini, Justice

Sitting:        Karen Angelini, Justice
                Steven C. Hilbig, Justice (not participating)
                Marialyn Barnard, Justice

Delivered and Filed:  April 17, 2013

AFFIRMED

David Fino was charged by indictment with seven counts of aggravated sexual assault of

a child and two counts of indecency with a child by contact.  A jury acquitted Fino of one count

of aggravated sexual assault and found Fino guilty on all other counts[1].  Fino pled true to an

enhancement allegation, and the trial court sentenced him to life imprisonment on each of the

---

[1] Fino was acquitted of aggravated sexual assault of a child by causing his sexual organ to penetrate the child's mouth.  Fino was found guilty of the remaining counts of aggravated sexual assault: two counts of causing his sexual organ to penetrate the child's sexual organ; one count of penetrating the child's sexual organ with his finger; one count of causing the child's sexual organ to contact his mouth; one count of causing the child's sexual organ to contact his sexual organ; and one count of continuous sexual abuse of a child by committing at least two of nine listed acts over a period of more than thirty days.  Fino was also found guilty of two counts of indecency of a child by contact: by touching the child's genitals and by causing the child to touch his genitals.

eight counts. Fino appeals, arguing the trial court erred in deciding who would testify as outcry witnesses and in admitting testimony of the sexual abuse nurse examiner, and arguing his trial counsel rendered ineffective assistance. We affirm the trial court's judgment.

### OUTCRY WITNESSES

In Fino's first point of error, he complains the trial court erred in its rulings at the pretrial reliability hearing regarding who would be allowed to testify at trial as outcry witnesses. Subsumed in this complaint are Fino's contentions that the victim's mother should have been the only outcry witness and that the State failed in its obligation to produce the mother at the hearing.

When a defendant is charged with certain offenses against a child under fourteen, article 38.072 of the Texas Code of Criminal Procedure permits the first person over the age of eighteen to whom the child makes a statement describing the offense to testify as to the child's statement. TEX. CODE CRIM. PROC. ANN. art. 38.072 (West Supp. 2012); *Sanchez v. State*, 354 S.W.3d 476, 484 (Tex. Crim. App. 2011). The "outcry witness" is "the first person, 18 years old or older, to whom the child makes a statement that in some discernible manner describes the alleged offense" and "the statement must be more than words which give a general allusion that something in the area of child abuse was going on." *Garcia v. State*, 792 S.W.2d 88, 91 (Tex. Crim. App. 1990). Testimony from more than one outcry witness may be appropriate if the witnesses testify about different events. *Broderick v. State*, 35 S.W.3d 67, 73–74 (Tex. App.—Texarkana 2000, pet. ref'd).

If the State intends to present an outcry witness, it must give timely notice to the defendant of the name of the outcry witness and a summary of the statement. TEX. CODE CRIM. PROC. ANN. art. 38.072, § 2(b). At a hearing outside the presence of the jury and at which the child is available to testify, the trial court determines whether the witness is a proper outcry

witness and whether the statement is reliable. *Id.*; *Garcia*, 792 S.W.2d at 91–92. If the court determines the statement is reliable based on the time, content, and circumstances of the statement, then the outcry witness may testify about the statement in the face of a hearsay objection. TEX. CODE CRIM. PROC. ANN. art. 38.072, § 2(b) (2). We review the trial court's decision as to the proper outcry witness for an abuse of discretion. *Garcia*, 792 S.W.2d at 92.

At the pretrial reliability hearing, the State announced it intended to present three outcry witnesses: Dr. Michelle Cantu, Officer Ralph Gomez, and Lucy Gallegos. K.F., who was nine at the time of trial, was available to testify at the hearing. Dr. Cantu testified that K.F. and her mother, Sally, had brought one of K.F.'s siblings to her office for an appointment. Doctor Cantu testified Sally was making a "commotion" in the waiting room and the doctor took Sally and K.F. into her office. Sally told the doctor that during the drive to the doctor's office K.F. told her that Fino had been touching her "inappropriately" and kissing her. Dr. Cantu's impression was that K.F. had not told Sally anything further.

Dr. Cantu testified she then questioned K.F., who told her that Fino had been going into her room at night and touching her with his hands and with his "private parts," and it was sometimes painful. However, she did not testify that K.F. told her where on her body Fino had touched her. K.F. was in first grade when she made the outcry and told Dr. Cantu this had been happening at least since kindergarten. After talking with K.F., Dr. Cantu called child protective services and the San Antonio Police Department.

San Antonio Police Officer Ralph Gomez testified at the hearing that he responded to the call at Dr. Cantu's office, where he spoke to K.F. privately. Officer Gomez testified K.F. told him Fino took her to the bedroom, where Fino asked her to take her clothes off and took his own clothes off. K.F. told him that Fino then had her "suck" his penis and that Fino touched her vaginal area with his penis. K.F. did not indicate to Officer Gomez this had occurred more than

one time and did not tell him a date, but he assumed from what K.F. said that it had occurred recently.

Lucy Gallegos is a forensic interviewer with Childsafe. Ms. Gallegos interviewed K.F. the day after K.F. revealed the abuse. Ms. Gallegos testified K.F. told her that Fino would ask K.F. to squeeze his "front" and described touching his penis and saying it was "squishy." K.F. told Ms. Gallegos it looked like a mushroom and it would grow, and that Fino told her it did so because he loved her. K.F. also told Ms. Gallegos that Fino would take off all their clothes and would place her on top of him and move up and down. K.F. denied any penile penetration occurred, but told Gallegos that Fino's "hair" was "poking" inside her vagina and it "hurt." Ms. Gallegos testified K.F. told her Fino's "hands would squeeze her butt when he was rubbing her vagina with his penis." K.F. told her this happened several times in each of three different rooms, starting when K.F. was about four and continuing until she was in the first grade, a few days before the interview.

The trial court found that K.F. did not give Sally or Dr. Cantu information in sufficient detail to make them outcry witnesses. The court found that K.F. related different events to Officer Gomez and to Ms. Gallegos and that each could testify as to certain events.

Fino first contends that Sally and/or Dr. Cantu were the only proper outcry witnesses. The evidence at the outcry hearing was that K.F. told her mother that Fino had been kissing her and touching her "inappropriately." These words amount to no more than a general allusion that abuse was occurring. *See Garcia*, 792 S.W.2d at 91. Likewise, Dr. Cantu's testimony at the hearing that K.F. said Fino touched her with his hands and with his "private parts" was insufficiently detailed to describe any of the sexual assaults alleged in the indictment. *See id.*; *Robinett v. State*, 383 S.W.3d 758, 762 (Tex. App.—Amarillo 2012, no pet.) (victims' statement to mother that accused touched their "private" and were made to touch his "private" do not

describe the offense of oral-penile contact with which defendant was charged; therefore mother was not proper outcry witness). The trial court did not abuse its discretion in determining Sally and Dr. Cantu were not proper outcry witnesses.

Fino also argues the State had an obligation, as part of its burden to prove the outcry, to call Sally as a witness during the pre-trial outcry hearing. Fino does not cite any authority that imposes such a burden on the State. In *Garcia*, the court held that the record of the outcry hearing supported the trial judge's determination and noted that the defendant had the opportunity to call the person he argued was the proper outcry witness or the complainant to "rebut" the predicate laid by the State. *Garcia*, 792 S.W.2d at 91–92. Here, the trial court heard evidence from Dr. Cantu regarding what K.F. initially told Sally. Fino did not call K.F., who was available to testify at the outcry hearing, to ask what she told her mother, and Fino did not subpoena Sally to testify at the hearing. He therefore failed to rebut the State's evidence regarding what K.F. first told her mother.

Fino next argues the trial court abused its discretion in determining that Officer Gomez and Ms. Gallegos were proper outcry witnesses because K.F. described to them events she had already disclosed to others. As discussed above, the trial court did not hear any evidence at the outcry hearing that the child described an alleged offense to either Sally or Dr. Cantu. However, K.F.'s statements to Officer Gomez and Ms. Gallegos described several of the different offenses alleged in the indictment. Moreover, the child's statements to Officer Gomez and Ms. Gallegos appeared to be describing different events.

We conclude the trial court did not abuse its discretion in ruling at the pretrial hearing that Officer Gomez and Ms. Gallegos were proper outcry witnesses and that Sally and Dr. Cantu were not.[2]

## RIGHT OF CONFRONTATION

In his second point of error, Fino argues the trial court's admission of statements made by K.F.'s mother to Sexual Assault Nurse Examiner Edward Russell violated his Sixth Amendment right of confrontation.

In *Crawford v. Washington*, the United States Supreme Court held a defendant's right to confrontation under the Sixth Amendment is violated when a witness is permitted to relate out-of-court "testimonial" hearsay statements unless the declarant is unavailable and the defendant had a prior opportunity to cross-examine the declarant. 541 U.S. 36, 59, (2004); *see De La Paz v. State*, 273 S.W.3d 671, 680 (Tex. Crim. App. 2008). Statements are testimonial only when "the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution." *Davis v. Washington*, 547 U.S. 813, 822 (2006). We "determine 'the primary purpose of the interrogation' by objectively evaluating the statements and actions of the parties to the encounter, in light of the circumstances in which the interrogation occurs." *Michigan v. Bryant*, 131 S. Ct. 1143, 1162 (2011). The relevant inquiry is "the purpose that reasonable participants would have had, as ascertained from the individuals' statements and actions and the circumstances in which the encounter occurred." *Id.* 131 S. Ct. at 1156. When the hearsay statements are in the context of an interview made primarily for the purpose of

---

[2] Fino argues for the first time on appeal that Ms. Gallegos should not have been allowed to testify as an outcry witness because K.F. had described the same alleged offenses to Sexual Assault Nurse Examiner Edward Russell before being interviewed by Ms. Gallegos. However, Fino did not object to Ms. Gallegos's testimony on this ground, either at the outcry hearing or at trial. Fino therefore failed to preserve this complaint for review. *See* TEX. R. APP. P. 33.1(a). The State had disclosed to Fino before the outcry hearing that K.F. had been examined by SANE Russell and the State had notified Fino that it intended to call Russell as an expert witness at trial. Nevertheless, Fino did not call Russell as a witness at the outcry hearing to rebut the State's argument that Ms. Gallegos was a proper outcry witness.

medical diagnosis and treatment, they are not testimonial. *See Melendez–Diaz v. Massachusetts*, 557 U.S. 305, 312 n. 2 (2009) (stating that medical records created for purposes of treatment are not testimonial within the meaning of *Crawford*); *Berkley v. State*, 298 S.W.3d 712, 715 (Tex. App.—San Antonio 2009, pet. ref'd) (holding that Sexual Assault Nurse Examiner's report was not testimonial where State presented evidence that purpose of report was to ensure a proper medical diagnosis is made and proper treatment is given).

When an objection is made based on *Crawford*, the proponent bears the burden to demonstrate its admissibility. *De La Paz*, 273 S.W.3d at 680–81. The trial court's ruling on whether a statement is testimonial is a constitutional legal ruling that we review de novo. *Wall v. State*, 184 S.W.3d 730, 742 (Tex. Crim. App. 2006).

Edward Russell testified he is a registered nurse and works at Christus Santa Rosa Children's Hospital. At the time of trial, Russell had been a registered nurse for thirty-three years and had been certified through the Texas Attorney General's Office as a sexual assault nurse examiner ("SANE") for three years.

Russell testified children usually arrive in the children's emergency department triage area. He is notified if concerns arise about a possible sexual assault. He escorts the child and family to a separate private area where sexual assault exams are done. Russell testified he begins a sexual assault examination by explaining to the child and the parent or guardian what he will be doing. The first step in the exam is to take a medical history, including information about behavioral, emotional, and physical symptoms. Russell explained that it is important for him to find out what happened and what symptoms the child has so that he can focus the rest of the exam on the location and nature of any injuries that might be present and be able to develop the appropriate medical plan of care. Russell stated he first tries to obtain information from the child. However, he usually must obtain additional information from the parent or guardian who

is present so he has an accurate history. Russell explained this is because young children generally are not reliable medical historians for themselves. Russell testified that as a medical provider, his primary purpose is to identify any injuries a child may have, ascertain their nature and extent, and tend to them appropriately.

After obtaining a medical history, Russell conducts a complete physical examination, focusing on areas of concern based on the information gleaned while taking the history. He then collects any forensic evidence that might be present or indicated based on the history and the examination. Any forensic evidence is processed, packaged, sealed, and turned over to hospital police. Russell testified he documents the history he obtains and what he finds on physical examination. The documents are medical records of the assessment and treatment and they are given to the physician for ongoing medical care and follow-up as needed.

Officer Gomez testified that when he talked to Sally at Dr. Cantu's office, he advised her to take K.F. to the hospital to get a sexual assault exam. Later that evening, Sally took K.F. to Christus Santa Rosa Children's Hospital. Russell was notified of their arrival and he conducted the sexual assault examination. Russell explained the examination process to them and then obtained a partial history from K.F., who had just turned seven years old. Russell then obtained further information from Sally. When Russell began to testify about what Sally told him, Fino objected on grounds the testimony was hearsay and violated his right to confrontation. After hearing evidence and argument outside the presence of the jury, the trial court ruled parts of Russell's interview of Sally were admissible because Sally's statement were made for the purpose of medical diagnosis and treatment. Russell then testified before the jury and a redacted copy of the medical record was admitted into evidence. On appeal, Fino complains the admission of Sally's statements, both in the report and in Russell's testimony, violated his right of confrontation. The statements he complains of are:

- "I asked the mother, 'Please tell me what happened,' . . . She told me, 'He gets naked and rubs himself on her. He kisses on her and says he loves her, and she doesn't like it.'"

- "And I asked her, 'When was the last time,' and the mother said, 'She said it was in Pre-K and kinder when it started."

- "'[K.F.] was at Methodist with a bladder infection a few years back.'"

- "The mother said a year ago [K.F.'s] bottom was hurting bad and she said he was doing it."

- "[T]he mother said [K.F.] was all red down there. . . . She is referring to [K.F.'s] genital area."

- "[I] asked the parent, 'Has she changed clothing since the last time something had happened to the child,' and she said [K.F.] was wearing the same underwear. . . . That the underwear had not been changed."

- "[T]he mother [said K.F. is] "[s]mall for her age.'"

- "The mother said, 'She is very picky, doesn't want to eat.'"

- "The mother . . . said, 'Since two years old, she rubs herself on things like metal bed posts. She obsessively does it, sometimes so much it would bleed.'"

- "The mother said that she is afraid she is going to die . . . [and] [t]hat she has a short temper."

- "The mother said she had a rash and bladder infections since she was born and it burns when she pees."

- "The mother said that [K.F.] will pee in the corner of the room or on a pile of clothes even when the rest room is a couple of feet away."

- "The mother said that she is always constipated."

In addition, Russell asked Sally whether, since the last time "something occurred," K.F. had done any of the following: urinated, bathed or showered, eaten or drank, used toothpaste or mouthwash, wiped, or changed clothes. Sally responded that K.F. had done all of those things except she had not changed her underwear.

To decide whether the trial court erred in holding Sally's statements to Russell were not testimonial, we must look objectively at the circumstances in which the interview occurred and

the statements and actions of the parties to determine "the purpose that reasonable participants would have had." *See Bryant*, 131 S. Ct. at 1156; *Coronado*, 351 S.W.3d at 324.

We begin with the fact that the interview occurred at a hospital and was conducted by a registered nurse with no law enforcement authority present or waiting nearby. The interview was not recorded. Although Officer Gomez had earlier told Sally she should take K.F. to be examined, Sally and K.F. went to the hospital on their own later that evening and were not accompanied by any law enforcement personnel. Russell's interview of Sally was part of a comprehensive medical examination that included interviews, a physical examination, and medical testing. SANE Russell explained in detail the purpose of each part of the examination and testified that he provided the explanation to Sally and K.F. before beginning. He testified the purpose of the interviews was to obtain information to help focus the later examination, to help address any medical concerns the patient has, and to help develop the appropriate medical plan of care. Russell's questions of Sally during the interview all appear to be directed to these purposes, and Sally's answers, as related by Russell, appear to have been a good faith effort to answer the questions asked.

After reviewing the circumstances in which SANE Russell interviewed Sally and the statements and actions of the parties involved, we hold the trial court did not err in concluding that the objective primary purpose of the interview was to obtain the information necessary to diagnose K.F.'s medical condition and to provide appropriate medical treatment, and it was not to establish past events potentially relevant to a later criminal prosecution. Accordingly, the trial court did not err in holding Sally's statements were not testimonial and we hold their admission into evidence did not violate Fino's right to confrontation.

## INEFFECTIVE ASSISTANCE OF COUNSEL

In his final point of error, Fino complains his trial counsel rendered constitutionally ineffective assistance by: (1) failing to object to inadequate notice of outcry witnesses; (2) failing to subpoena Edward Russell to testify at the pretrial reliability hearing; (3) failing to demonstrate to the trial court that the outcry witnesses were improper; (4) failing to establish harm after adverse rulings during voir dire;[3] (5) failing to request for appeal the record of the hearing on whether to permit K.F. to testify via closed circuit television;[4] (6) failing to object to testimony—Dr. Cantu's testimony about her "feelings," Officer Gomez's testimony about K.F.'s outcry, and a comment by Ms. Gallegos about K.F.'s credibility; (7) failing to request redaction of inadmissible hearsay from an exhibit; (8) failing to request employment of a defense expert to rebut the testimony of Edward Russell and Dr. Nancy Kellogg;[5] and (6) making a "plainly incompetent closing argument."

To establish ineffective assistance of counsel, a defendant must show his trial counsel's performance was deficient and the deficient performance prejudiced him. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To demonstrate deficient performance, the defendant must prove by a preponderance of the evidence that counsel's performance fell below an objective standard of reasonableness. *Bone v. State*, 77 S.W.3d 828, 833 (Tex. Crim. App. 2002); *Thompson v. State*, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999). Our review of defense counsel's representation is "highly deferential" and we presume "counsel's actions fell within the wide range of reasonable and professional assistance." *Bone*, 77 S.W.3d at 833. To overcome this presumption, "[a]ny allegation of ineffectiveness must be firmly founded in the record, and

---

[3] Fino does not argue any of the adverse rulings were erroneous.

[4] Although trial counsel did not request this part of the record be prepared, appellate counsel did and the record of the hearing is part of the appellate record. Notably, Fino does not raise any grounds of error based on this hearing.

[5] We note that Fino has not shown that any expert who would testify as argued in his brief exists and was available to testify to that effect.

the record must affirmatively demonstrate the alleged ineffectiveness." *Thompson*, 9 S.W.3d at 813. "[T]rial counsel should ordinarily be afforded an opportunity to explain his actions before being denounced as ineffective." *Rylander v. State*, 101 S.W.3d 107, 111 (Tex. Crim. App. 2003). When the record contains no direct evidence of counsel's reasons for the challenged conduct, "we will assume that counsel had a strategy if any reasonably sound strategic motivation can be imagined." *Lopez v. State*, No. 343 S.W.3d 137, 143 (Tex. Crim. App. 2011). We "will not conclude the challenged conduct constituted deficient performance unless the conduct was so outrageous that no competent attorney would have engaged in it." *Garcia v. State*, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001). In the absence of a developed record, we will "not speculate as to the reasons why trial counsel acted as he did, rather [we] must presume the actions were taken as part of a strategic plan for representing the client." *Rodriguez v. State*, 336 S.W.3d 294, 302 (Tex. App.—San Antonio 2010, pet. ref'd);

A defendant claiming ineffective assistance of counsel must also establish prejudice by showing "a reasonable probability that, but for his counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is one sufficient to undermine confidence in the outcome." *Mitchell v. State*, 68 S.W.3d 640, 642 (Tex. Crim. App. 2002). Failure to prove either deficient performance or prejudice is fatal to any complaint of ineffective assistance. *Strickland*, 466 U.S. at 700.

The record is devoid of any inquiry into counsel's actions or the reasons for the choices counsel made before and during trial. Fino has therefore failed to meet his burden to show trial counsel performed deficiently. Moreover, Fino offers nothing other than a conclusory statement in support of the prejudice prong of *Strickland*. The failure to make any effort to prove the prejudice prong precludes any relief. *Ladd v. State*, 3 S.W.3d 547, 570 (Tex. Crim. App. 1999);

*Badillo v. State*, 255 S.W.3d 125, 131 (Tex. App.—San Antonio 2008, no pet.).  We therefore overrule Fino's third and final point of error.

The judgment of the trial court is affirmed.

Karen Angelini, Justice

Do not publish