

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-17-00535-CR

James Artie **SHAW**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 399th Judicial District Court, Bexar County, Texas
Trial Court No. 2016CR8585
Honorable Frank J. Castro, Judge Presiding

Opinion by:    Karen Angelini, Justice

Sitting:    Sandee Bryan Marion, Chief Justice
Karen Angelini, Justice
Irene Rios, Justice

Delivered and Filed:  May 30, 2018

AFFIRMED

James Artie Shaw was convicted by a jury of aggravated sexual assault and indecency with a child.  In two issues on appeal, Shaw contends his due process rights were violated by the introduction of false testimony and trial counsel rendered ineffective assistance of counsel.  We affirm the trial court's judgment.

## BACKGROUND

In November of 2015, A.S.'s mother saw Shaw, who is A.S.'s father, using A.S.'s hand to perform a sexual act on himself.  The following month, A.S.'s mother saw Shaw penetrating A.S.'s

mouth with his sexual organ. At that time, the family was living in Las Vegas; however, the evidence at trial established the sexual abuse began when the family was living in San Antonio. In January of 2016, A.S.'s mother left Shaw and moved with A.S. and her other children to Virginia. In March of 2016, while A.S.'s mother was visiting San Antonio, she walked into a police station and reported the sexual abuse.

Shaw was subsequently charged with aggravated sexual assault by intentionally and knowingly causing his sexual organ to penetrate the mouth of A.S., "a child who was younger than 6 years." Shaw was also charged with indecency with a child by causing A.S. to touch his genitals with the intent to arouse or gratify the sexual desire of any person. A jury convicted Shaw of both offenses, and he appeals.

### FALSE TESTIMONY

In his first issue, Shaw contends his due process rights were violated by the introduction of false testimony. Shaw points to the testimony of A.S.'s mother that A.S. was less than six years old in September of 2015. A.S. turned six on November 24, 2014. Because A.S. was not six years old in September of 2015, the testimony was false. *See Ex parte Robbins*, 360 S.W.3d 446, 460 (Tex. Crim. App. 2011) (noting false testimony is defined to include testimony that is untrue).

"The Due Process Clause of the Fourteenth Amendment can be violated when the State uses false testimony to obtain a conviction, regardless of whether it does so knowingly or unknowingly." *Ex parte Robbins*, 360 S.W.3d at 459. "[T]o constitute a due process violation, the testimony used by the State must have been false, and [the testimony] must have been material to the defendant's conviction." *Id*.

In this case, no objection was made to the false testimony. A defendant must object to the false testimony of a witness to preserve the issue for appellate review. *Castillo v. State*, No. 04-11-00422-CR, 2013 WL 781776, at *13 (Tex. App.—San Antonio Mar. 1, 2013, pet. ref'd) (mem.

op., not designated for publication); *Davis v. State*, 276 S.W.3d 491, 499-500 (Tex. App.—Waco 2008, pet. ref'd); *Haliburton v. State*, 80 S.W.3d 309, 315 (Tex. App.—Fort Worth 2002, no pet.). Even if the complaint had been preserved, however, the use of false testimony only violates due process when the testimony is material. *Ex parte Ghahremani*, 332 S.W.3d 470, 478 (Tex. Crim. App. 2011). In this context, false testimony is only material when there is a reasonable likelihood that the false testimony affected the outcome of the trial. *Ex parte Robbins*, 360 S.W.3d at 459; *Ex parte Ghahremani*, 332 S.W.3d at 478.

During trial, the jury repeatedly heard testimony that A.S. was born on November 24, 2008. A.S. stated during her interview with the detective and testified at trial that the sexual abuse in San Antonio occurred at the "pink house." The evidence established the family lived at the "pink house" from April of 2014 to September of 2014. A.S. turned six on November 24, 2014. Therefore, the testimony by A.S.'s mother that A.S. was less than six years old in September of 2015 is not material because no reasonable likelihood exists that the false testimony affected the outcome of the trial.

**INEFFECTIVE ASSISTANCE OF COUNSEL**

In his second issue, Shaw contends trial counsel rendered ineffective assistance of counsel by: (1) failing to notify the trial court regarding the false testimony; (2) failing to object to evidence of extraneous offenses, specifically the sexual abuse that occurred while the family was living in Las Vegas; and (3) failing to object to the introduction of a prejudicial photograph.

To prevail on an ineffective-assistance-of-counsel claim, an appellant must prove, by a preponderance of the evidence, that (1) counsel's performance was deficient, i.e., counsel's assistance fell below an objective standard of reasonableness, and (2) he was prejudiced by counsel's deficient performance, i.e., a reasonable probability exists that but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland v.*

*Washington*, 466 U.S. 668, 687 (1984); *Nava v. State*, 415 S.W.3d 289, 307 (Tex. Crim. App. 2013). When evaluating counsel's effectiveness, we look to the totality of the representation and the particular circumstances of each case. *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999). We indulge "a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance," and allegations of ineffectiveness "must be firmly founded in the record." *Id*. at 813. In the absence of a developed record, we will not speculate as to the reasons trial counsel acted as he did. *Rodriguez v. State*, 336 S.W.3d 294, 302 (Tex. App.—San Antonio 2010, pet. ref'd). Rather, we "must presume the actions were taken as part of a strategic plan for representing the client." *Id*.

Shaw first contends trial counsel was ineffective in failing to object to the false testimony. Because we have determined the false testimony was not material, Shaw cannot show the result of the proceeding would have been different if trial counsel had objected. Shaw also contends trial counsel should have objected to the following during the State's closing argument: (1) the prosecutor's misstatement of the law that the State was only required to prove the aggravated sexual assault occurred before the presentment of the indictment because the State had to prove A.S. was under the age of six at the time of the offense; and (2) the prosecutor's misstatement of the fact that A.S. did not turn six until she was living in Las Vegas. First, we note the record is silent as to the reason trial counsel did not object. *See id*. Second, the jury charge required the jury to find that the act occurred on or about September 1, 2014, when the evidence established A.S. was five. Finally, as previously noted, the evidence established the sexual assault occurred while the family was living in the "pink house" from April to September of 2014, when A.S. was five.

Shaw next contends trial counsel was ineffective in failing to object to the testimony regarding the sexual abuse that occurred in Las Vegas. The State responds extraneous offenses

are admissible when they are so intertwined with the proof of the charged offense that their omission makes the case difficult to understand or incomplete. Because A.S.'s mother learned about the sexual abuse due to the Las Vegas acts, the State asserts the Las Vegas acts were admissible to explain how the case began because "the jury would have been understandably confused by the police investigation that would eventually follow the Las Vegas events." Because the record is silent regarding the reason trial counsel did not object, we will not speculate as to trial counsel's reasons but must presume his decision not to object was part of his strategy. *Id*.

Finally, Shaw contends trial counsel was ineffective in failing to object to State's Exhibit 48, which Shaw describes as "a photograph of the Appellant in Handcuffs taken in an unrelated incident to this matter." State's Exhibit 48 was among a series of photographs the State sought to introduce as evidence of Shaw's assault on A.S.'s mother in May of 2013. After the prosecutor asked about the assault, defense counsel asked to approach the bench and informed the trial court that he was objecting if the State intended to offer the photographs of the assault. The trial court excused the jury from the courtroom, and the admissibility of the photographs was discussed. At the conclusion of the discussion, the trial court ruled he was going to allow the photographs to be admitted, and the following exchange occurred:

> [Defense counsel]: Oh, real quick, Your Honor. There's a photograph of him in handcuffs in that stack of photos, I would object to that.
> THE COURT: You're going to try to enter the one with the handcuffs? More than likely going to leave that out.
> [Prosecutor]: I have that marked, Your Honor. I was going to show it, yes, as to his state that day.
> THE COURT: Can you show it to me? I just could tell you right now, you can try to offer it, but more than likely I will leave it out.
> [Prosecutor]: Forty —
> THE COURT: Yeah, I'm not going to allow that in. I mean, you can try it, you can make your objection for the record if you still want to, but just letting you know ahead of time.
> [Prosecutor]: Understand, Your Honor.

The jury returned to the courtroom, and the prosecutor asked A.S.'s mother to identify State's Exhibits 37 through 58. A.S.'s mother identified State's Exhibit 48 as a photograph of Shaw and responded "yes" when she was asked if the photograph was "a fair and accurate depiction of how he looked on [the] day" of the assault. After A.S.'s mother identified the photographs, the prosecutor moved to introduce them into evidence. Defense counsel objected, the attorneys approached the bench, and the trial court ruled as follows:

> THE COURT: Yeah, I think for the most part — I'm going to allow these two. I'm not going to allow 40, 41, 42, 43, 44, 46 and 47, but I'm going to allow these two and from the door which are 39, 45, 37 and 38 are admitted. … I'll allow 53 and 52. And there was a couple here. Forty-nine, 50 and 51 are admitted. Those are admitted also.

The record then reflects, "(State's Exhibits 37, 38, 39, 45, 49, 50, 51, 52, and 53, admitted)." Although the photograph is included in the exhibit volume, the index to that volume reflects State's Exhibit 48 was not admitted into evidence. Therefore, the record reflects trial counsel objected to the admission of State's Exhibit 48, and the exhibit was not admitted into evidence.

## CONCLUSION

The judgment of the trial court is affirmed.

Karen Angelini, Justice

DO NOT PUBLISH