

# Fourth Court of Appeals

## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-18-00084-CR
No. 04-18-00085-CR

Tracy O'Neil **COBBS**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 399th Judicial District Court, Bexar County, Texas
Trial Court No. 2017CR9299 and Trial Court No. 2017CR9300
Honorable Frank J. Castro, Judge Presiding

Opinion by: Irene Rios, Justice

Sitting: Luz Elena D. Chapa, Justice
Irene Rios, Justice
Liza A. Rodriguez, Justice

Delivered and Filed: January 23, 2019

AFFIRMED

Tracy Cobbs appeals his convictions for aggravated sexual assault of a child. On appeal, he contends the evidence is insufficient to support his convictions and that he received ineffective assistance of counsel. We affirm the judgments of the trial court.

## BACKGROUND

On April 10, 2015, while Michael, the father of the complainants Michelle and Sallie,[1] was detained in the Bexar County Jail, the girls' mother Brandi left the girls in the care of appellant Tracy Cobbs. Following Michael's release from jail on April 16, 2015, Michael learned from Brandi that his children were with Cobbs and made arrangements to retrieve the girls, which he did on Friday, April 17, 2015. The girls spent the weekend with Michael, but Michael was unable to locate Brandi to return the girls to her care on Sunday, April 19, 2015. Beginning Wednesday, April 22, 2015, Michael's father and his father's common-law wife Dora, who the children considered their grandmother, cared for the children because Brandi could not be found and Michael had a job out of state.

During their stay with their grandparents, the girls made an outcry of sexual abuse against Cobbs to Dora. Dora contacted Michael and asked him to return home. On May 4, 2015, Michael returned home and learned what the girls told Dora. On May 5, 2015, the girls made an additional outcry of sexual abuse against Cobbs to Michael. After contacting authorities, Michael took the girls to Mission Trails Baptist Hospital for examinations. However, the officials at Mission Trails did not examine the girls because the alleged abuse had taken place more than two weeks prior. Michael then took the girls to Children's Hospital, where they were examined by a sexual assault nurse examiner (SANE).

Following an investigation, the State charged Cobbs in two indictments, each naming a different complainant, with two offenses of "super" aggravated sexual assault of a child.[2] A jury

---

[1] We refer to the minor complainants by pseudonyms. *See* TEX. R. APP. P. 9.10(a)(3).

[2] The Penal Code does not refer to a "super" aggravated sexual assault offense, but the term refers to the charged offense which contains a sentencing enhancement because the victim was less than 14 years old. *See e.g. Rosales v. State*, 548 S.W.3d 796, 801 (Tex. App.—Houston [14th Dist.] 2018, pet. ref'd); *see also* TEX. PENAL CODE ANN. § 22.021(f)(2). The judgments of conviction for each trial court cause state that Cobbs was convicted of "SUPER AGG SEX ASSAULT-CHILD (HABITUAL)." For ease of reference, we will also use the term.

found Cobbs guilty of the charged offenses, and Cobbs pleaded true to the enhancement paragraphs. The trial court assessed punishment at two terms of life imprisonment.

This appeal followed.

## SUFFICIENCY OF THE EVIDENCE

In issue one, Cobbs contends the evidence is insufficient to support his convictions. Cobbs specifically refers to the testimony of the girls' step-sister, who is an additional uncharged-victim, which he argues is inconsistent with his own daughter's testimony.

## Standard of Review

We review the sufficiency of the evidence to support a conviction by viewing all of the evidence in the light most favorable to the verdict to determine whether any rational fact-finder could have found the essential elements of the crime beyond a reasonable doubt. *See Arroyo v. State*, No. PD-0797-17, 2018 WL 4344410, at *2 (Tex. Crim. App. Sept. 12, 2018) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). This standard gives full play to the fact-finder's responsibility to resolve testimonial conflicts, weigh the evidence, and draw reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319; *Arroyo*, 2018 WL 4344410, at *2; *Murray v. State*, 457 S.W.3d 446, 448 (Tex. Crim. App. 2015). Further, the fact-finder is the sole judge of the weight and credibility to be given to the testimony. *See* TEX. CODE CRIM. PROC. ANN. art. 38.04; *Dobbs v. State*, 434 S.W.3d 166, 170 (Tex. Crim. App. 2014). Thus, when performing an evidentiary sufficiency review, we may not re-evaluate the weight and credibility of the evidence and substitute our judgment for that of the fact-finder. *See Montgomery v. State*, 369 S.W.3d 188, 192 (Tex. Crim. App. 2012). Instead, we determine whether the necessary inferences are reasonable based upon the cumulative force of all the evidence when viewed in the light most favorable to the verdict. *Murray*, 457 S.W.3d at 448. We must presume that the fact-finder

resolved any conflicting inferences in the verdict's favor and defer to that resolution. *Id*. at 448–49.

In cases involving sexual offenses committed against children, the Texas Court of Criminal Appeals has determined that a minor's testimony alone is sufficient to prove that the alleged assault occurred. *Garcia v. State*, 563 S.W.2d 925, 928 (Tex. Crim. App. 1978). The Code of Criminal Procedure codifies this concept into the law as it provides that a conviction for sexually assaulting a child is supportable by "the uncorroborated testimony of the victim of the sexual offense[.]" TEX. CODE CRIM. PROC. ANN. art. 38.07(a).

**Discussion**

A person commits the offense of aggravated sexual assault of a child if the person intentionally or knowingly causes the penetration of the anus or sexual organ of a child under the age of fourteen, by any means. *See* TEX. PENAL CODE ANN. §§ 22.021(a)(1)(B)(i), (a)(2)(B). In this case, the jurors were specifically instructed that to find Cobbs "guilty of aggravated sexual assault of child younger than six (6) years of age, as charged in the indictment in Cause Number 2017-CR-9299[,]" they were required to find "beyond a reasonable doubt that on or about [April 16, 2015], … Cobbs, did intentionally or knowingly cause the penetration of the sexual organ of [Michelle], a child who was younger than [six] years, by … Cobbs'[s] finger[.]" Likewise, the jurors were instructed that to find Cobbs "guilty of aggravated sexual assault of child younger than six (6) years of age, as charged in the indictment in Cause Number 2017-CR-9300[,]" they were required to find "beyond a reasonable doubt that on or about [April 16, 2015], … Cobbs, did intentionally or knowingly cause the penetration of the sexual organ of [Sallie], a child who was younger than [six] years, by … Cobbs'[s] finger[.]"

Michael testified that Michelle was born on May 28, 2009, and that Sallie was born on August 13, 2010. Both Michelle and Sallie testified during trial; at the time of the trial, the girls

were eight and seven years' old, respectively. Michelle testified that she slept with Cobbs in his bed, wearing Cobbs's shirt but "with no panties on." According to Michelle, Cobbs told her she could not wear panties because there were none clean. Michelle further testified that Cobbs scrubbed her body as she showered and "he went to my no-no" which Michelle described as between her legs. Michelle also testified that when Cobbs washed between her legs, she felt his finger inside her "no-no." When asked how many times Cobbs "put his finger inside [her] no-no[]" during the time Brandi left her in Cobbs's care, Michelle responded "[a] lot of times." Michelle testified the penetration occurred both in the shower and in Cobbs's bed. Michelle further testified that more than once she was wakened when Cobbs "open[ed her] legs and he start[ed] licking [her no-no]." When asked if anything else made her uncomfortable during her stay with Cobbs, Michelle stated Cobbs made her watch a "nasty video" on his phone and told her if she "didn't he would whoop us with the belt."

Sallie testified Cobbs touched her in her "private parts" while they were bathing. Sallie described her "private part" as "down in the bottom of my stomach" where she would "[g]o to the restroom … [n]umber one." When asked how Cobbs touched her, Sallie responded "[h]e would stick his finger in my private part." Sallie also responded, when asked how often Cobbs touched her, that it only happened when she took a bath, which she stated was "five times." Sallie further testified that after bathing, she wore "[a] big, long shirt with no underwears." Sallie further described how Cobbs would hold her on his lap while she had no underwear on and "he moved around like up and down." According to Sallie, Cobbs told her it felt good. Sallie testified that it did not feel good to her, stating it hurt her "private part and [her] bottom part." Sallie identified her bottom part is where she goes "number two." Sallie further testified it hurt when Cobbs put his finger inside her.

At the time of trial, Mary (a pseudonym), Michelle's and Sallie's older step-sister, testified she was in eighth grade. Mary testified she was friends with Cobbs's daughter, Sarah (a pseudonym), and would visit the Cobbs home, sometimes for days at a time. Mary testified that Cobbs touched her in her vagina. Mary described one occasion when she fell asleep on the sofa and was awakened by the feel "of someone touching down there … [i]n [her] vagina." Mary testified she didn't tell anyone because Cobbs "has a lot of knives, like a lot of them" and he once told her he kills for what he wants, which scared her. Mary testified that although Cobbs was confined to a wheelchair, he was able to drive, cook, and shower without assistance.

According to Sarah, Mary was a good friend and visited the Cobbs home often. Sarah testified Mary stayed in the same room as Sarah when Mary visited. Sarah additionally testified she never noticed that Mary's behavior changed. Sarah also testified that Mary never seemed frightened of Cobbs. Further, according to Sarah, she was a light sleeper and would have heard if Cobbs was up during the times Mary visited. Sarah confirmed Cobbs showered himself, had use of his arms, hands, and fingers, and was able to use his tongue and mouth to eat.

In a criminal case, juries have a right to decide whether the witnesses who testified were credible and to decide what weight, if any, should be attached to a witness's testimony. *See Jackson*, 443 U.S. at 319. Ultimately, when the evidence and inferences available from the evidence are in conflict, we must presume that the jury resolved any existing conflicts in favor of the manner the jury voted to reach its unanimous verdict. *See id*. at 326.

Cobbs specifically argues the evidence supporting his convictions is insufficient because Mary's testimony conflicts with that of his daughter. However, apart from Mary's and Sarah's testimony, the jury also heard testimony from both Michelle and Sallie detailing the offenses against them. We conclude the jury was within its right as the fact-finder to evaluate any inconsistencies and could have reasonably decided to credit the Michelle's and Sallie's testimony

that the sexual assaults occurred. *Id*. We conclude, viewing the evidence in the light most favorable to the verdict, the jury could reasonably have found the essential elements of the alleged offenses beyond a reasonable doubt.

Issue one is overruled.

## INEFFECTIVE ASSISTANCE OF COUNSEL

Cobbs contends he received ineffective assistance of counsel because trial counsel failed to object to the admission of two SANE reports, which Cobbs argues contain inadmissible hearsay.

## Standard of Review

To prevail on an ineffective-assistance-of-counsel claim, an appellant must prove, by a preponderance of the evidence that (1) counsel's performance was deficient, i.e., counsel's assistance fell below an objective standard of reasonableness, and (2) he was prejudiced by counsel's deficient performance, i.e., a reasonable probability exists that but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Nava v. State*, 415 S.W.3d 289, 307 (Tex. Crim. App. 2013).

When evaluating counsel's effectiveness, we look to the totality of the representation and the particular circumstances of each case. *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999). "It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." *Strickland*, 466 U.S. at 689. Accordingly, we indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance. *Thompson*, 9 S.W.3d at 813. Therefore, Cobbs "'must overcome the presumption that, under the circumstances, the challenged

action might be considered sound trial strategy.'" *Ex parte Moore*, 395 S.W.3d 152, 157 (Tex. Crim. App. 2013) (quoting *Strickland*, 466 U.S. at 689).

"A substantial risk of failure accompanies an appellant's claim of ineffective assistance of counsel on direct appeal." *Thompson*, 9 S.W.3d at 813. "[A]llegations of ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness." *Id*. at 814. In this case, Cobbs did not file a motion for new trial, and therefore, the trial court did not hold a hearing at which a record on trial counsel's strategy could be developed. Therefore, we are faced with a silent record.

In the absence of a developed record, we will not speculate as to the reasons trial counsel acted as he did. *Rodriguez v. State*, 336 S.W.3d 294, 302 (Tex. App.–San Antonio 2010, no pet.). Rather, we presume the actions were taken as part of a strategic plan for representing the client. *Id*. Moreover, "an appellate court should not find deficient performance unless the challenged conduct was 'so outrageous that no competent attorney would have engaged in it.'" *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005) (quoting *Garcia v. State*, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001)).

The prejudice prong of *Strickland* requires a showing that counsel's errors were so serious that they deprived the defendant of a fair trial, i.e., a trial with a reliable result. *Strickland*, 466 U.S. at 687. In other words, an appellant must show there is a reasonable probability that, without the deficient performance, the result of the proceeding would have been different. *Id*. at 694; *Nava*, 415 S.W.3d at 308. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Strickland*, 466 U.S. at 694; *Nava*, 415 S.W.3d at 308. The ultimate focus of our inquiry must be on the fundamental fairness of the proceeding in which the result is being challenged. *Strickland*, 466 U.S. at 697. Failure to make the required showing of either deficient

performance or prejudice defeats an appellant's ineffectiveness claim. *Thompson*, 9 S.W.3d at 813.

**Discussion**

On appeal, Cobbs argues the SANE reports should not have been admitted in their entirety because each "contained more information than simply diagnosis and treatment" and "[t]here are numerous pages of narrative with regard to details of each [complainants'] interaction with [Cobbs]." When claiming ineffective assistance for failing to object, an appellant must demonstrate that if trial counsel had objected, the trial court would have committed error by overruling the objection. *Ex parte Martinez*, 330 S.W.3d 891, 901 (Tex. Crim. App. 2011).

Our review of the appellate record indicates that the SANE reports, admitted as State's Exhibits No. 5 and No. 6, comprise nearly 500 pages of the exhibit volume. Cobbs does not specify which "specific details as to when and where touching occurred" and which questions posed by the examiners that "elicited statement which were not necessary for diagnosis and treatment" are objectionable and inadmissible hearsay. Cobbs offers no argument regarding whether if trial counsel had objected to the admission of the SANE reports in their entirety, the trial court would have erred by overruling the objection. *See id.* Nor has Cobbs shown there is a reasonable probability that, without the alleged deficient performance, the result of the proceeding would have been different. *See Strickland*, 466 U.S. at 694.

Accordingly, we conclude Cobbs has failed to show trial counsel rendered ineffective assistance of counsel by failing to object to the admission of the SANE reports in their entirety.

Issue two is overruled.

## CONCLUSION

The judgment of the trial court is affirmed.

Irene Rios, Justice

DO NOT PUBLISH