DIVISION OF FAMILY SERVICES,
Of the STATE OF MISSOURI,
Petitioner,

and

J.D. and J.D., Minors, By and Through
Next Friend D.D.,

and

D.D., Individually, Petitioner–Appellant,

v.

D.M.,

and

Pam Edlin and Ted Edlin, Respondents.

No. WD 45572.

Missouri Court of Appeals,
Western District.

March 2, 1993.

Ray E. Sousley, Vleisides, Donnelly, O'Leary & Sousley, P.C., Kansas City, for petitioner-appellant.

D.M., respondent pro se.

William D. Fickle, Platte City, for respondents Edlin.

Before BERREY, P.J., and ULRICH and SMART, JJ.

ULRICH, Judge.

D.D., natural mother of J.D. and J.D., minors, appeals the final order of the Circuit Court of Clay County which placed the minor children in the permanent custody of the Division of Family Services. The question presented is whether the trial court, exercising authority pursuant to the Uniform Parentage Act, sections 210.817 to 210.852, RSMo Supp.1991, and specifically section 210.829, exceeded its jurisdiction by removing custody of the two minor children from the natural mother and placing them under the control of the Division of Family Services and in the physical custody of Ted and Pam Edlin. Only the natural mother filed a brief and appeared by counsel for argument.

D.D., natural mother of J.D. and J.D., minor children, was the legal and actual custodian of the children. D.M., the natu-

ral father of the children, and the natural mother have never married each other nor have they lived together for a significant length of time. The natural father denied paternity and provided no financial support for the children. The natural mother received financial aid from the State of Missouri to help support the children pursuant to section 208.040.[1]

The natural mother assigned her right to receive support for the minor children from the natural father to the Division of Family Services. The assignment was prerequisite for the natural mother to receive aid from the state. § 208.040.2(2).[2]

The Division of Family Services through the Clay County Prosecutor's office initiated suit against D.M. April 10, 1989. § 454.400.1, RSMo 1986. An amended petition was filed May 1, 1990. Although neither the petition nor the amended petition stated the statutory authority invoked, the petition was filed under the provisions of the Uniform Parentage Act, sections 210.-817 to 210.852. § 210.851, RSMo Supp. 1989. The petition named the minor children, ages four years old and sixteen months old respectively, and their mother as their next friend and individually as petitioners along with the Division of Family Services. The form petition was captioned "Petition for Declaration of Paternity and Order of Support and Custody," and asked the court for declaration of paternity and child support and that the custody of the children be placed with the natural mother. The petition was signed by the natural mother as "petitioner and next friend" for the two minor children. The Prosecuting Attorney of Clay County rep-

resented the Division of Family Services and the natural mother against the natural father for determination of "paternity, support and custody." Thus, pursuant to the provisions of section 208.040.2(3), the natural mother cooperated with the Division of Family Services' effort to obtain reimbursement from the natural father for financial aid the natural mother received from the state, including filing as petitioner the petition and appearing as a witness at the trial.

During the trial which began on October 11, 1990, the natural mother appeared in person and by counsel, an Assistant Clay County Prosecuting Attorney. The Division of Family Services appeared and was also represented by the same Assistant Clay County Prosecuting Attorney. The putative father appeared in person and with counsel, and the guardian ad litem for the two minor children appeared in their behalf.

The natural mother testified during the hearing on October 11, 1990, the first of two hearings. The natural mother admitted on cross-examination to having smoked marijuana approximately three weeks before the trial. One of the minor children was with her at the time. A man with whom she had smoked marijuana had baby sat with her children. The natural mother also admitted on cross-examination to having used cocaine and marijuana in her house on other occasions. She stated that her children were not with her during these occasions when she used cocaine and marijuana. She admitted that she was hospitalized for depression in the fall of 1989. She

---

**1.** Section 208.040, RSMo Supp.1990, was the statute applicable when this case was initially presented. Section 208.040, RSMo Supp.1991 became effective August 28, 1991, and the trial court conducted a second hearing on October 11, 1991, and entered its order on October 11, 1991. The General Assembly modified the statute slightly in 1992. All references to section 208.040 are to section 208.040, RSMo 1991 unless stated.

**2.** Section 452.345.1, RSMo Supp.1991 defines a "IV–D case" as a case "in which support rights have been assigned to the State of Missouri pursuant to section 208.040, RSMo, or where the Missouri division of child support enforce-

ment is providing support enforcement services pursuant to section 454.425, RSMo" as used in sections 452.345 to 452.350. The term "IV–D case" is used in four other statutes including section 454.400, RSMo Supp.1991, which establishes the Division of Child Support Enforcement and defines its duties and powers to include the power to sue and to review the "adequacy of child support orders in IV–D cases," § 454.400.2(1), (13), and section 454.435.4, RSMo Supp.1991, which authorizes prosecuting attorneys "to initiate judicial or administrative modification proceedings on IV–D cases at the request of the division."

testified that she once attempted suicide and was hospitalized.

The natural father testified. The natural father had completed serving a one-year sentence in the Clay County Jail shortly before trial. Although the natural father had denied paternity of the two minor children born to D.D. when the case was initiated, following the results of a blood test, he admitted paternity. He, too, admitted smoking marijuana on at least two occasions and to having used cocaine. He was uncertain whether he wanted visitation rights with the children and did not request their custody.

Following the hearing on October 11, 1990, the trial court entered its "temporary order." The court found D.M. to be the natural father of the two minor children and ordered him to pay $200 per month for their support. The trial court found "that the natural mother has used controlled substances while having physical custody of her two minor children." The court found that placement of the two minor children in the temporary custody of the Division of Family Services was in their best interest. The court granted the natural parents supervised visitation with the minor children at the discretion of the Division of Family Services. On November 14, 1990, the court amended its October 11, 1990, order to approve temporary placement of the minor children with Pam and Ted Edlin.

On February 27, 1991, the court ordered that the natural father "may have visitation supervised by the Edlins no more than twice a week and said times for visitation to be in the sole discretion of the Edlins, that the [natural] mother ... may have visitation with the minor children, ... to be supervised by the Division of Family Services, said visitation to be no more than once a week and the times for visitation to be at the discretion of the Division of Family Services." The same order denied telephone contact between the children and either of their parents.

On October 24, 1991, the trial court conducted a second hearing. The natural parents were present, and each was then represented by private counsel. Intervenors Ted Edlin and Pam Edlin appeared in person and by counsel. The Division of Family Services appeared and was represented by counsel.

Judith A. Pollard, Social Services worker with the Clay County Division of Family Services, testified at the October 24, 1991, hearing that she had conducted a home study of the natural mother's home. The Division of Family Services had exercised custodial authority over the two minor children since the trial court's order of October 11, 1990. At the conclusion of the hearing, the trial court found no substantial change in the circumstances since its October 11, 1990, order and entered an additional order dated October 30, 1991. The provision of the court's October 11, 1990, order which required the natural father to pay $200 per month to support the minors was not changed.

The court's final order of October 30, 1991, provided that the two minor children were to remain in the custody and control of the Division of Family Services, placement being with Ted and Pam Edlin. The October 30, 1991, order also provided that the natural father may have visitation with the two minor children supervised by the Edlins no more than twice a week at times to be in the sole discretion of the Edlins and that the natural mother could have visitation with the minor children no more than once a week at times within the discretion of the Division of Family Services. The order precluded the natural parents from removing the children from the care, custody and control of Ted and Pam Edlin without specific authorization by the court. The court again denied telephone contact between the children and either of their parents.

■ The issue considered is whether the trial court, exercising authority pursuant to The Uniform Parentage Act, sections 210.817 to 210.852, RSMo Supp.1991, and specifically section 210.829, to determine paternity and appropriate child support payments due from the noncustodial parent, the named respondent in the petition filed by the natural mother pursuant to her obligation under section 208.040, exceeded its

jurisdiction by removing custody of the two minor children from the natural mother and placing them under the control of the Division of Family Services and in the physical custody of Ted and Pam Edlin.

Statutes located in several chapters apply in this case and must be analyzed. Section 208.040 imposes requirements upon applicants who seek financial aid from the state to benefit their children. The statute requires assignment of rights to child support to Missouri and compels cooperation of the applicant to obtain for the state the amount owed from the person obligated to provide the child support. Section 208.-040.2 provides in part that:

The division of family services shall require as additional conditions of eligibility for benefits that each applicant for or recipient of aid:

.    .    .    .    .

(2) Shall assign to the division of family services in behalf of the state any rights to support from any other person such applicant may have in his own behalf or in behalf of any other family member for whom the applicant is applying for or receiving aid. An application for benefits made under this section shall constitute an assignment of support rights which shall take effect, by operation of law, upon a determination that the applicant is eligible for assistance under this section. The assignment is effective as to both current and accrued support obligations and authorizes the division of child support enforcement of the department of social services to bring any administrative or judicial action to establish or enforce a current support obligation, to collect support arrearages accrued under an existing order for support, or to seek reimbursement of support provided by the division; [and]

(3) Shall cooperate with the divisions of family services and of child support enforcement unless the division of family services determines in accordance with federally prescribed standards that such cooperation is contrary to the best interests of the child on whose behalf aid is claimed or to the caretaker of such child,

in establishing the paternity of a child born out of wedlock with respect to whom aid is claimed, and in obtaining support payments for such applicant and for a child with respect to whom such aid is claimed, or in obtaining any other payments or property due such applicant or such child....

While section 208.040 provides for assignment of the right to obtain child support to the Division of Family Services as a prerequisite to receive state aid to support one's child, section 208.040 does not grant to circuit courts jurisdiction to adjudicate the assignment, to determine parentage, or to adjudicate associated matters.

Section 454.400.1, RSMo Supp.1991 establishes the " 'Division of Child Support Enforcement' to administer the state plan for child support enforcement." Section 454.400.2(1) grants the Division of Child Support Enforcement the power to sue. Section 454.420, RSMo 1986, provides that

[a]ny legal action necessary to establish or enforce support obligations owed to the state shall be brought by prosecuting attorneys ... upon being furnished notice by the division [of child support enforcement] of such obligation. If the amount of the support obligation owed to the state has not been determined because no court order exists, the division of child support enforcement may refer the case to the appropriate prosecuting attorney.

The provisions of the Uniform Parentage Act are stated in sections 210.817 to 210.-852, RSMo Supp.1991. § 210.851. Section 210.829 establishes jurisdiction in the circuit courts to determine actions filed to establish parentage. Section 210.841.3 provides in part that "[t]he [trial court's] judgment or order may contain any other provision against the appropriate party to the proceeding concerning the duty of support, the custody and guardianship of the child, visitation privileges with the child ... or any matter in the best interest of the child." Section 210.826.1 provides that the Division of Child Support Enforcement may bring an action to determine a child's father. Section 210.826.1 states:

A child, his natural mother, a man presumed to be his father under subdivision (1), (2), or (3) of subsection 1 of section 210.822, or the division of child support enforcement may bring an action:

> (1) At any time for the purpose of declaring the existence of the father and child relationship ...; or

> (2) For the purpose of declaring the nonexistence of the father and child relationship....

Finally, section 208.040.2(2) provides that the assignment to the Division of Family Services in behalf of the state of the right to child support by the parent or other eligible relative caring for a dependent child from any other person authorizes the Division of Child Support Enforcement "to bring any administrative or judicial action to establish or enforce a current support obligation, to collect support arrearages accrued under an existing order of support, or to seek reimbursement of support provided by the division." Thus, the Division of Child Support Enforcement has statutory authority to initiate suit to determine the "father and child relationship." The Division of Child Support Enforcement also has statutory authority to refer for prosecution the state's claim for reimbursement of child support payments paid by the Division of Family Services and the right to child support assigned to the Division of Family Services pursuant to section 208.040.

The Division of Family Services is not authorized to file suit as a party to determine the "father and child" relationship under section 210.826 or to refer to the appropriate attorney for prosecution in behalf of the state the assigned claim for child support against the perceived putative father pursuant to section 208.040. Yet, in this case, apparently the Division of Family Services and not the Division of Child Support Enforcement referred the case to the Clay County Prosecutor's office and was a named party petitioner on the petition.

The Division of Family Services exceeded its statutory authority and was an improper party to the case.

Although section 210.829 empowered the trial court with authority to determine whether the named respondent in the petition was the natural father of the two named minor children petitioners, the statute granted only limited jurisdiction regarding the issue of custody of the minor children. The circuit court lacked jurisdiction under section 210.829 to adjudicate the custody of the children except as "against the appropriate party to the proceeding." § 210.841.3. The Division of Family Services was an improper party to the action. The Division of Child Support Enforcement, potentially a proper party, could not have been awarded custody of the children had it been a named party because it lacks the statutory authority to receive custody and to care for children. *See* § 454.400. Thus, the only proper parties to the action able to receive legal custody of the minor children were the natural parents, and the putative father did not seek their custody and was uncertain whether he wanted visitation rights.[3] Therefore, evidence at the October 11, 1990, hearing, the first hearing, that caused the court to believe the children were "without proper care" in the custody of their mother required the court to refer that question to the Juvenile Division of the Court or the county juvenile officer who then could have filed a petition with the juvenile division of the circuit court pursuant to section 211.081.1, RSMo Supp.1990.

Section 211.031.1, RSMo Supp.1991, grants jurisdiction to the juvenile division of circuit courts to consider the issue of proper custody of a child when the care and custody of that child is in issue. The statute states in part that:

> Except as otherwise provided herein, the juvenile court shall have exclusive jurisdiction in proceedings:

> > (1) Involving any child ... who may be a resident of or found within the coun-

---

**3.** Ted and Pam Edlin were erroneously granted actual custody of the minor children and improperly permitted to intervene in this proceeding since they had no right under section 210.826.1 to sue the named respondent in the petition to determine paternity, to enforce the state's right to obtain reimbursement for child support paid to the natural mother under section 208.040, or to seek custody of the minor children in this case.

ty and who is alleged to be in need of care and treatment because:

(b) The child ... is otherwise without proper care, custody or support;

....

Thus, section 211.031 grants to the juvenile division of the circuit courts exclusive jurisdiction to consider custody of a minor child when a child resides in the county and is without proper care, custody or support.

■ The natural mother's due process rights were violated, also. The natural mother was compelled by section 208.040 to assist the state and to assign rights of support in order to receive needed financial aid from the state to support her children. In fulfillment of this obligation, she consented to sign the petition prepared and filed by the prosecutor to determine paternity and to obtain a judgment of child support which ultimately might facilitate reimbursement to the state the amount of financial aid the state provided the natural mother to support her children. She appeared and testified at the October 11, 1990, hearing in compliance with section 208.040. However, the natural mother was never served with any document asserting that the care of the children was deficient and that her custody of the children was at issue. The natural father did not seek custody of his children and the Division of Family Services, although an improper party, did not contest the mother's right to custody. Neither was the natural mother represented by independent counsel representing solely her interests during the first hearing on October 11, 1990. The prosecuting attorney could not have considered his role to include representing the natural mother's interest in maintaining custody of her children. Nothing in the petition filed by the county prosecutor in behalf of the Division of Family Services or the response of the natural father alleged that the children were receiving inadequate care, and the natural mother was never placed on notice that the custody of her children was an issue until the trial court removed the children from her custody and placed them with the Division of Family Services following the October 11, 1990, hearing. Thus, the natural mother's rights to due process

of law under the United States and Missouri Constitutions were obviously violated.

Presentation of the custody issue to the Juvenile Division of the Circuit Court would have resulted in satisfaction of the natural mother's due process rights. The procedures established by Chapter 211 facilitate due process by requiring that the legal custodian of a minor child whose care is at issue be served with allegations that the care of the child under her charge is less than the law requires. § 211.101, RSMo Supp.1992. Such notice permits the legal custodian to defend the allegations which potentially jeopardize her custody of the minor child within established procedures in the proper forum. Due process of law is then provided.

The trial court's jurisdiction was to determine paternity, appropriate child support owed by the natural father and the custody of the minor children as between the proper parties. After finding that the named respondent was the natural father and that he did not seek custody of the children, only the mother could have been considered their custodian. The trial court was without authority to place the children with the Division of Family Services. The court's belief that the children were not receiving necessary care required the court to refer the matter to appropriate authorities to determine the issue in the Juvenile Division of the Circuit Court.

The portion of the judgment that declares the paternity of the children and requires the natural father to pay $200 per month is affirmed. The portion of the judgment that orders the removal of the minor children from the custody of the natural mother, their placement with the Division of Family Services, and their actual custody with Pam and Ted Edlin is reversed. The Division of Family Services and Pam and Ted Edlin are ordered to return the children to the natural mother forthwith.

All concur.