

# Fourth Court of Appeals
## San Antonio, Texas

## OPINION

No. 04-12-00237-CR

Phillip Wayne **GRIFFIS**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 7th Judicial District Court, Smith County, Texas
Trial Court No. 007-1767-08
The Honorable Kerry L. Russell, Judge Presiding

Opinion by:    Patricia O. Alvarez, Justice

Sitting:    Catherine Stone, Chief Justice
    Marialyn Barnard, Justice
    Patricia O. Alvarez, Justice

Delivered and Filed:  April 30, 2014

AFFIRMED

Appellant Phillip Wayne Griffis was indicted for the offense of assault on a public servant. On March 8, 2012, the jury found Griffis guilty and assessed punishment at twenty years confinement in the Institutional Division of the Texas Department of Criminal Justice. We affirm the trial court's judgment.

### FACTUAL BACKGROUND

On September 10, 2007, Griffis was in a motel parking lot when he was approached by Tyler Police Officers Donald Shafer and John Carnes. The officers testified they were on foot

patrol when they heard loud music coming from the parking lot. Both officers were in full uniform when they approached Griffis. Griffis was driving a Pontiac Solstice convertible with the top down. According to the officers, Griffis was wearing cutoff shorts, sweating profusely, and appeared to have possibly urinated on himself. Griffis was initially very cooperative and friendly and explained that he was looking for a friend. However, when Officer Shafer checked for Griffis's inspection sticker, Officer Shafer could see, in plain view, a "loaded syringe sticking in the [driver's] seat."

After confirming that Griffis had no medical need for a syringe and was not diabetic, Officer Shafer suspected the syringe contained a controlled substance. Although Officer Shafer testified that he already had enough probable cause to search Griffis's person, he requested permission to conduct the search. When Officer Shafer asked Griffis if he had anything illegal on his person, Griffis's demeanor changed. "[His demeanor] became eerie, dead silent." Both officers described Griffis as putting his head down and looking for "somewhere to run" and continuously saying, "This is my life. This is my whole life."

Officer Shafer informed Griffis he was going to be detained. As the officers approached Griffis to place him in handcuffs, Griffis started fighting them. Officer Shafer testified "[a]s soon as I put my hands on him [in an effort to detain him], the fight was on. It was a struggle." Officer Shafer compared the scuffle to a "barroom fight: [Griffis was k]icking, pulling, doing everything he [could] to get away from us." Officer Shafer also testified Griffis exhibited "incredible strength for his size and stature" and was "basically throwing us around like a rag doll."

Officer Shafer explained that after he and Griffis ended up on the ground, he performed a "touch stun" with his Taser. The touch stun is intended as pain compliance, meaning "people will usually subdue or stop resisting at the onset of pain." Even after four or five touches, the Taser had no effect on Griffis. To the contrary, Griffis continued to struggle and kick and prevented the

officers from pulling his arms from under his body to handcuff him. Officer Shafer testified that as a result of the struggle, his knees, elbows, and forearms were scratched by the pavement.

In the course of struggling with the officers, Griffis was able to take something from his front pocket and put it in his mouth. Griffis's continued refusal to comply with the officers' instructions resulted in an escalation of force in an attempt to control the situation. Within minutes, Officers Luiz Aparicio and Michelle Brock arrived to assist. Officers Shafer and Carnes were on the ground struggling with Griffis when Officer Brock attempted to use her Taser on Griffis and inadvertently hit Officer Shafer. Griffis continued to fight and only after a fifth officer, Officer Randall Tucker, arrived, were the officers able to gain control over Griffis. The other officers testified similarly to the events.

In his appellate brief, Griffis contends the struggle was misconstrued. He never intended to act in an aggressive manner, but was instead attempting to move his arm up his body to gain access to his shirt pocket. Specifically, Griffis contends he "intended to lay face down on the ground with his hands in a tight grip beneath him until he could get rid of the [methamphetamine] in his pocket. He never intended to wrestle the officers. He considered that to be worse than the dope."

The jury convicted Griffis of the charge of assault on a peace officer and assessed punishment at twenty-years confinement in the Institutional Division of the Texas Department of Criminal Justice. The jury did not assess a fine. This appeal ensued.

## PROCEDURAL HISTORY

On April 23, 2012, Griffis's notice of appeal was filed by his appellate attorney. After several extensions were granted by this court, Griffis's attorney filed a brief on October 11, 2012 alleging (1) the evidence was legally insufficient to support the use of force, (2) the trial court erred in allowing Griffis to represent himself, and (3) the trial court erred in assessing attorney's

fees. On October 22, 2012, Griffis filed a pro se motion to dismiss his appellate counsel and to withdraw the brief filed by his appellate counsel. On November 14, 2012, this court granted Griffis's motions and abated the matter to the trial court for a hearing to address Griffis's concerns. Pursuant to the trial court's findings, on December 18, 2012, this matter was reinstated on this court's docket and Griffis's motions to represent himself on appeal and to strike the brief, filed by appellate counsel on October 11, 2012, were granted. After several more extensions, Griffis filed his pro se brief on May 30, 2013 and the State filed its response on July 17, 2013.

We address each of Griffis's issues separately.

### SUFFICIENCY OF THE EVIDENCE

In his first issue, Griffis contends the evidence is legally insufficient to support the jury's finding that (1) Officer Donald Shafer was injured by Griffis struggling and striking with his hand and kicking with his foot and (2) Officer Shafer was lawfully discharging his official duty as a public servant at the time of the alleged assault. In response, the State argues this court need look no further than Officer Shafer's testimony that he received bodily injuries in his struggle with Griffis while attempting to detain Griffis after viewing an apparent controlled substance in plain view.

### A.     Standard of Review

In reviewing the legal sufficiency of the evidence, an appellate court determines whether, viewing "all the evidence in the light most favorable to the verdict, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt." *Hardy v. State*, 281 S.W.3d 414, 421 (Tex. Crim. App. 2009); *accord Brooks v. State*, 323 S.W.3d 893, 899 (Tex. Crim. App. 2010); *see also Jackson v. Virginia*, 443 U.S. 307, 319 (1979). We must defer to the jury's assessment of the credibility of the witnesses "and the weight to be given their testimony," *Brooks*, 323 S.W.3d at 899, and allow for reasonable inferences from the evidence presented.

*Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007); *see also* TEX. CODE CRIM. PROC. ANN. art. 38.04 (West 1979) ( "the jury, in all cases, is the exclusive judge of the facts proved, and of the weight to be given to the testimony except where it is [otherwise] provided by law . . . . " except where provided otherwise by law); *Jackson*, 443 U.S. at 319 (reiterating it is strictly the province of the jury "fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts"). In so doing, an appellate court presumes that the jury "resolved the conflicts in favor of the prosecution and therefore defer[s] to that determination." *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

The key question is whether "the evidence presented actually supports a conclusion that the defendant committed the crime that was charged." *Williams*, 235 S.W.3d at 750. Only upon a finding the evidence is legally insufficient will this court reverse the trial court's judgment and order an acquittal. *See Tibbs v. Florida*, 457 U.S. 31, 41 (1982). This legal sufficiency standard applies equally to both direct and circumstantial evidence. *Clayton*, 235 S.W.3d at 778; *King v. State*, 29 S.W.3d 556, 565 (Tex. Crim. App. 2000).

**B.       Assault on a Peace Officer**

To prove the offense of assault on a public servant, the State must prove (1) the defendant "intentionally, knowingly, or recklessly cause[d] bodily injury" to a public servant; (2) the defendant knew the other person was a public servant; and (3) the public servant was lawfully discharging his official duties at the time of the assault. *See* TEX. PENAL CODE ANN. § 22.01(a), (b)(1) (West Supp. 2013); *see also Hall v. State*, 158 S.W.3d 470, 473 (Tex. Crim. App. 2005). "Bodily injury" is defined as "physical pain, illness, or any impairment of physical condition." *See* TEX. PENAL CODE ANN. § 1.07(a)(8) (West Supp. 2013). The term "public servant" includes a police officer. *See Carriere v. State*, 84 S.W.3d 753, 757 (Tex. App.—Houston [14th Dist.] 2002, pet. ref'd); *McCoy v. State*, 932 S.W.2d 720, 723 (Tex. App.—Fort Worth 1996, pet. ref'd).

The indictment charged that Griffis

> did then and there intentionally, knowingly, or recklessly cause bodily injury to Donald Shafer by struggling and striking with hand and kicking with foot, and the defendant did then and there know that the said Donald Shafer was then and there a public servant, to-wit: City of Tyler police officer, and that the said Donald Shafer was then and there lawfully discharging an official duty, to-wit: detaining the defendant for a violation of the law . . . .

Griffis appears to argue the evidence is insufficient to prove his intent to injure Officer Shafer. Specifically, Griffis asserts that because he was high on methamphetamines at the time of the offense, his behavior caused the officers to use their Tasers, and that it was his reflexive reaction to the Tasers that caused him to injure Officer Shafer and not any intentional act on his part.

## C.     Analysis

The record shows that as Officer Shafer attempted to handcuff Griffis and a struggle ensued. Although Griffis initially cooperated with the officers, when asked if he had anything illegal on his person, Griffis began to resist. Both Officer Shafer and Officer Carnes testified to a struggle akin to a bar fight with kicking and hitting. Even after having the Taser used several times, Griffis continued to struggle and fight. During the continuing struggle, Officer Shafer fell to the ground and sustained scratches to his arms and legs. Although Griffis correctly argues the record does not substantiate he actually "threw a punch," the statute does not require such acts. *See* TEX. PENAL CODE ANN. § 22.01(a), (b)(1). Additionally, whether Griffis's actions were a result of his resisting, as opposed to a violent attack on the officers, is also irrelevant. *See id.*; *Dolkart v. State*, 197 S.W.3d 887, 893 (Tex. App.—Dallas 2006, pet. ref'd).

Considering the evidence in the light most favorable to the verdict, we conclude that the evidence is legally sufficient to establish that Griffis intentionally, knowingly, or recklessly caused bodily injury to Officer Shafer, a police officer lawfully discharging an official duty. *See Brooks*, 323 S.W.3d at 899. We therefore overrule Griffis's first issue.

### INEFFECTIVE ASSISTANCE OF COUNSEL

A criminal defendant has a Sixth Amendment right to effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 684–86 (1984) (citing U.S. CONST. amend. VI). A party claiming ineffective assistance of counsel has the burden to establish, by a preponderance of the evidence, a "deficient performance of trial counsel and harm resulting from that deficiency that is sufficient to undermine the confidence in the outcome of the trial." *Ex parte Moore*, 395 S.W.3d 152, 157 (Tex. Crim. App. 2013) (citing *Strickland*, 466 U.S. at 687). To establish deficient performance, Griffis must prove that his attorney's performance "'fell below an objective standard of reasonableness' under prevailing professional norms and according to the necessity of the case." *Id.* (quoting *Strickland*, 466 U .S. at 687–88). To establish harm, Griffis must "demonstrate that he was prejudiced by his attorney's performance or that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Id.* at 158 (footnote omitted) (quoting *Strickland*, 466 U.S. at 694).

"An appellate court looks to the totality of the representation and the particular circumstances of each case in evaluating the effectiveness of counsel." *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999). "There is a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance." *Id.* Therefore, Griffis "'must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.'" *Ex parte Moore*, 395 S.W.3d at 157 (quoting *Strickland*, 466 U.S. at 689).

"A substantial risk of failure accompanies an appellant's claim of ineffective assistance of counsel on direct appeal." *Thompson*, 9 S.W.3d at 813. "In the majority of instances, the record on direct appeal is simply undeveloped and cannot adequately reflect the failings of trial counsel." *Id.* at 813–14. "[T]rial counsel should ordinarily be afforded an opportunity to explain his actions

before being denounced as ineffective." *Rylander v. State*, 101 S.W.3d 107, 111 (Tex. Crim. App. 2003). In the absence of a developed record, we will not "speculate as to the reasons why trial counsel acted as he did, rather [we] must presume that the actions were taken as part of a strategic plan for representing the client." *Rodriguez v. State*, 336 S.W.3d 294, 302 (Tex. App.—San Antonio 2010, pet. ref'd).

Griffis set forth a long list of complaints regarding his trial counsel's representation. As a matter of judicial efficiency, we have combined several of Griffis's claims into broader groups. We address each group individually.

## A.  Failure to File a Motion to Dismiss the Indictment for Lack of Speedy Trial

Griffis contends that he received ineffective assistance because trial counsel did not move to dismiss the indictment for lack of speedy trial under article 32.01 of the Texas Code of Criminal Procedure. TEX. CODE CRIM. PROC. ANN. art. 32.01 (West 2006). Article 32.01 requires dismissal of a prosecution when the defendant is held in custody or admitted to bail and no indictment is presented within 180 days of his arrest. *Id.* Griffis was arrested on September 10, 2007 and the grand jury returned an indictment on November 13, 2008. We agree the State exceeded article 32.01's 180-day deadline. *Id.*

If, however, a grand jury has returned an indictment by the time the complaint is brought before the trial court, the court is no longer required to release the defendant from custody. *See Ex parte Countryman*, 226 S.W.3d 435, 436–39 (Tex. Crim. App. 2007) (in a habeas proceeding, holding a "speedy-indictment claim" moot when the indictment was returned before the trial court heard the motion to dismiss the indictment); *see also Brooks v. State*, 990 S.W.2d 278, 285 (Tex. Crim. App. 1999) (reiterating that article 32.01 "has no application once an indictment is returned"). Here, Griffis's counsel was not appointed until July 28, 2011, two and a half years after the grand jury returned the indictment against Griffis.

Courts have consistently held "a reasonably competent counsel need not perform a useless or futile act." *Ex parte Chandler*, 182 S.W.3d 350, 356 (Tex. Crim. App. 2005) (citing *Mooney v. State*, 817 S.W.2d 693, 698 (Tex. Crim. App. 1991)). Because Griffis had already been indicted by a grand jury when his counsel was appointed by the trial court, any motion to dismiss would have been moot. Counsel is not required to engage in the filing of futile motions and Griffis has not presented this court with any authority that such a motion would be successful. *See Mooney*, 817 S.W.2d at 698 ("Counsel is not required to engage in the filing of futile motions."). We overrule this issue.

**B.     Failure to File Motion for Favorable Evidence**

Griffis next contends his defense counsel failed to file a motion requesting the State provide a copy of all favorable evidence, specifically photographs of the marks left by Officer Shafer's Taser and the data-download sheets for the Tasers assigned to each of the five officers involved in placing him under arrest. The record, however, does not demonstrate whether any such documents existed. *See Wert v. State*, 383 S.W.3d 747, 757 (Tex. App.—Houston [14th Dist.] 2012, no pet.) (overruling appellant's complaint because he failed to show that any unknown evidence helpful to appellant "could have been uncovered by means of filing discovery motions"). Griffis's complaint is, therefore, merely a conclusion not firmly founded in the record. *See Thompson*, 9 S.W.3d at 812–14.

Even assuming the exhibits were in the State's possession, there is no evidence the exhibits would have changed the outcome of the case. *See Ex parte Moore*, 395 S.W.3d at 158 (citing *Strickland*, 466 U.S. at 694). All five officers testified that Griffis's behavior was erratic. Although the exact picture about which Griffis complains was not offered, there were over twenty photographs admitted into evidence showing the extent of Griffis's injuries. The officers each identified the Tasers used on Griffis and why the Tasers were used. The jury viewed a video, taken

from Officer Aparicio's vehicle, beginning from when Officer Aparicio and Officer Brooks arrived on the scene. The jury was presented with a plethora of evidence and testimony regarding Griffis's injuries and how Tasers were used to restrain him.

Because the record does not substantiate that the complained of evidence actually existed or that any such evidence would have changed the outcome of the case, we overrule this issue.

**C.      Failure to Request an Expert Witness**

Griffis argues defense counsel provided ineffective assistance by failing to request the trial court appoint an expert to (1) verify his claim that his actions were involuntary and (2) locate eye-witnesses seen in the State's photograph from the scene.

*1.       Expert Regarding Effects of Taser*

Griffis contends the Taser caused involuntary reactions and, therefore, any contact between himself and Officer Shafer was not the result of an intentional act. The State contends the jury heard witness after witness testify as to the struggle that ensued between Griffis and the officers. The jury also heard Officer Shafer testify the Taser is used to subdue a defendant. "[B]asically, what it's designed to do . . . [it] contracts the muscles and locks them up to where you can't move; and allows [the officers] to safely take someone into custody." During Officer Shafer's testimony, the State also offered the video showing Officer Shafer being tazed by Officer Brook's weapon. "It knocks you down. It's designed to do exactly what it did to me. And, basically, what I look like is a dead turtle just rolling over in my shell."

Here, there was no hearing to explore defense counsel's trial strategy. *See Rylander*, 101 S.W.3d at 111 (record insufficient to support ineffective assistance of counsel claim where record was silent regarding reason counsel failed to call expert witness); *Rodriguez*, 336 S.W.3d at 302. There was also no proffer regarding what an expert would have testified that was different than the testimony before the jury. In the absence of a proper evidentiary record, it is extremely difficult

to show that trial counsel's performance was deficient. *See Rylander*, 101 S.W.3d at 110–11; *Thompson*, 9 S.W.3d at 213–14.

    2.    *Locating Eye-Witnesses*

Griffis asserts the State's photograph of the scene depicts witnesses in the background and his attorney failed to request a private investigator to locate the witnesses. Although Griffis contends these individuals were witnesses to the offense, the State argues the pictures were taken after Griffis and Officer Shafer had been transported to the hospital. The State's argument is supported by the witnesses' recollection of the events. To the contrary, the record is silent regarding the existence of any individuals who witnessed the offense and were available to a private investigator or how any such testimony would differ from the testimony already presented or affect the outcome. *See Mooney*, 817 S.W.2d at 698. Finally, without a record as to why counsel made specific decisions, we cannot say that defense counsel's decisions were not part of his trial strategy. *Mares v. State*, 52 S.W.3d 886, 891 (Tex. App.—San Antonio 2001, pet. ref'd) (failure to file pre-trial motions not categorically deemed ineffective assistance of counsel because trial counsel may decide not to file pre-trial motions as part of trial strategy).

Because the record does not reflect the reasons behind trial counsel's failure to hire experts, we are unable to determine whether counsel's actions were part of a sound trial strategy and we overrule this issue.

**D.    Refusal to Strike Juror Off Venire**

Griffis contends he requested defense counsel to use a peremptory strike against one of the jurors, but that defense counsel refused to do so and, as a result, the objectionable juror remained on the jury. As opposed to most of Griffis's arguments, this issue was raised before the trial court.

After the jury was seated, Griffis addressed the court regarding the juror in question, identified as Juror #24, and his intention to have struck the juror. After admonishing Griffis that

all objections had to be made by his defense attorney, the court asked defense counsel if he would like to respond.

> Counsel: [W]e spent a meticulous amount of time going through and utilized all strikes. First round that we went through, he had only used five. . . . [H]e did end up telling me that, "How did he end up on here?"
>
> And I said, "We only have 10 strikes."
>
> Court: You and your lawyer—as your lawyer has just alluded to, y'all discussed that and y'all turned in an official strike list from which I make the official list. And, of course, it's here. It's marked. Always becomes a part of the record. And it very clearly shows strikes on Numbers 1, 3, 7, 14, 15, 21, 22, 26, 30 and 31. . . .
>
> Griffis: . . . I just wanted to ask if there was anything that we could do.

When the court explained there was nothing, Griffis made no further objections and did not question or counter his trial counsel's response. "[T]he right to trial by impartial jury, like any other right, is subject to waiver (or even forfeiture) by the defendant in the interest of overall trial strategy." *State v. Morales*, 253 S.W.3d 686, 697 (Tex. Crim. App. 2008). Based on the record before us, defense counsel affirmatively stated that he and Griffis made the selections together. We, thus, conclude that the presumption of sound trial strategy has not been overcome. *See Rylander*, 101 S.W.3d at 110–11; *Rodriguez*, 336 S.W.3d at 302.

We overrule this issue.

**E.     Refusal to Offer Griffis's Version of the Events to the Jury or Request Jury Charge on Voluntariness**

Griffis next contends that trial counsel (1) failed to share with the jury his version of the arrest, including that either Officer Shafer or Officer Carnes shot him in the back of the neck with the Taser when he was already on the ground; (2) failed to request a jury charge on voluntariness—which was evidence of his ineffective assistance; (3) refused to point out to the jury the lack of

hospital records regarding Shafer's injuries; and (4) failed to object to the State's pleading in the conjunctive and charging in the disjunctive.

At the close of the State's case, Griffis elected to represent himself and the court admonished him regarding such representation. By knowingly and voluntarily choosing to represent himself, Griffis waived each of these arguments and may not now attack "stand by counsel" for Griffis's own failures. *Perez v. State*, 261 S.W.3d 760, 766 (Tex. App.—Houston [14th Dist.] 2008, pet. ref'd) (citing *Faretta v. California*, 422 U.S. 806, 834 n.46 (1975)) ("[W]hen a convicted defendant has insisted upon self-representation, any subsequent claim of ineffective assistance of counsel is not to be considered."); *see also Dunn v. State*, 819 S.W.2d 510, 526 (Tex. Crim. App. 1991).

Each of these complaints is overruled.

## F.      Failure to Object to State's Introduction of Extraneous Evidence

Griffis asserts defense counsel provided ineffective assistance by failing to object to the State's introduction of extraneous evidence, specifically the syringe and the "meth recipe."

Texas Rule of Evidence 404(b) provides that evidence of extraneous offenses is not admissible at the guilt phase of a trial to prove that a defendant committed the charged offense in conformity with a bad character. TEX. R. EVID. 404(b); *Powell v. State*, 63 S.W.3d 435, 438 (Tex. Crim. App. 2001). Because the jury is entitled to hear relevant surrounding facts and the circumstances of the charged offense, some extraneous misconduct evidence is admissible. *Wyatt v. State*, 23 S.W.3d 18, 25 (Tex. Crim. App. 2000). Additionally, contextual evidence, or same-transaction evidence, "is admissible only when the offense would make little or no sense without also bringing in that evidence, and it is admissible 'only to the extent that it is necessary to the jury's understanding of the offense.'" *Devoe v. State*, 354 S.W.3d 457, 469 (Tex. Crim. App. 2011) (quoting *Wyatt v. State*, 223 S.W.3d at 25).

"To successfully assert that trial counsel's failure to object amounted to ineffective assistance, the [appellant] must show that the trial judge would have committed error in overruling such an objection." *Ex parte Martinez*, 330 S.W.3d 891, 901 (Tex. Crim. App. 2011). Here, the syringe and evidence of methamphetamine use were an integral part of the State's case, specifically as to (1) the probable cause to search Griffis, (2) the change in Griffis's demeanor, and (3) an explanation for Griffis's excessive combativeness. Griffis's defense counsel presumably knew and understood the parameters of Rule 404(b). Because the record is silent as to why counsel failed to object, we presume his conduct was reasonable. *See Rylander*, 101 S.W.3d at 110; *Thompson*, 9 S.W.3d at 813–14. The record shows that any such objection would have been properly overruled. *See id.* Accordingly, this issue is overruled.

## G.     Ineffective Assistance

Contrary to Griffis's assertion that defense counsel "did just enough" to overcome an ineffective assistance of counsel claim, Griffis was provided with effective assistance until Griffis, himself, elected to proceed pro se. Griffis failed to prove that his attorney's performance "fell below an objective standard of reasonableness or that he was prejudiced." *Ex parte Moore*, 395 S.W.3d at 157; *see also Strickland*, 466 U.S. at 687. We, therefore, overrule all of Griffis' claims alleging ineffective assistance of counsel.

SIXTH AMENDMENT RIGHT TO SELF-REPRESENTATION

Griffis contends the trial court failed to properly inquire as to why Griffis proceeded pro se. Specifically, Griffis alleges (1) there was a complete breakdown in communication and a fundamental breakdown in the attorney-client relationship, (2) his decision to represent himself was out of necessity and was not voluntary, and (3) the *Faretta* hearing was inadequate. *See, generally, Faretta*, 422 U.S. at 818–21. The State responds the trial court properly admonished Griffis and Griffis's current complaints about his counsel are different than the reasons he provided

at the time of trial. When questioned by the trial court, Griffis's sole complaint was his displeasure with his attorney's refusal to ask certain questions.

### A.    Griffis Elected to Appeal Pro Se

A defendant has a constitutional right to waive his right to counsel and represent himself pro se. *See id*. at 819–20; *Funderburg v. State*, 717 S.W.2d 637, 641 (Tex. Crim. App. 1986). When a defendant elects to represent himself, the trial court must admonish the defendant on the dangers and disadvantages of self-representation and the trial court should ensure that the defendant's waiver of counsel was made by knowingly and intelligently. *See Faretta*, 422 U.S. at 835; *Funderburg*, 717 S.W.2d at 641. The record, therefore, must affirmatively show the defendant was properly admonished and his waiver was made knowingly and intelligently. *See Goffney v. State*, 843 S.W.2d 583, 584–85 (Tex. Crim. App. 1992). In assessing the validity of a waiver of counsel,

> the court must make an inquiry, evidenced by the record, which shows that the defendant has sufficient intelligence to demonstrate a capacity to waive his right to counsel and the ability to appreciate the practical disadvantage he will confront in representing himself. The court must determine not only that the defendant wishes to waive his right to counsel, but that he understands the consequences of such waiver.

*Mayberry v. State*, 23 S.W.3d 172, 173 (Tex. App.—Waco 2000, pet. ref'd) (citing *George v. State*, 9 S.W.3d 234, 237 (Tex. App.—Texarkana 1999, no pet.)).

Here, in addition to admonishing Griffis, the trial court ordered defense counsel to remain as standby counsel and Griffis ultimately allowed defense counsel to represent him during the punishment phase. *See Robertson v. State*, 934 S.W.2d 861, 864–66 (Tex. App.—Houston [14th Dist.] 1996, no pet.) (stating *Faretta* admonishments not required where standby counsel appointed); *see also Walker v. State*, 962 S.W.2d 124, 125–26 (Tex. App.—Houston [1st Dist.]

1997, pet. ref'd) (holding *Faretta* admonishments not required because defendant had access to appointed standby counsel).

**B.      Admonishment by the Trial Court**

Although the State argues the only objection at trial pertained to defense counsel's questions, we read Griffis's objections broadly. When Griffis informed the court of his wishes to represent himself, he stated, "[defense counsel] hasn't been asking the questions that I've been wanting to ask. That's just part of the problem."

The trial court acknowledged that the court and Griffis had previously discussed the issue of self-representation. Griffis confirmed that at each of the previous requests to proceed pro se, he ultimately decided that he wanted a lawyer to represent him. Griffis explained, "Especially at that point, I certainly wasn't ready. And I'm not so sure I'm ready now, but I'm willing to try. There's definitely some questions that I want to ask. And I'm sure that the State will correct me every opportunity that they get."

The trial court inquired about Griffis's education. Griffis offered that he was forty-eight years old; he left school after the eighth grade, but had obtained his GED in 1987; he attended Lee College and studied welding and pipe fabrication; and he had never previously represented himself in a court proceeding. In an attempt to make sure Griffis understood the role he was seeking to undertake, the trial court explained as follows:

> Well, the lawyers that come in are required to know the Texas Rules of Evidence, the Texas Rules of Criminal Procedure, and many other rules that have application [to] how a trial is handled in the State of Texas.
>
> We find—and I always share because I think it's pretty practical advice to people—that when we're in law school being trained as lawyers, the law professors, one of the things they drill into us is that over your lifetime of practicing law, if you're fortunate enough to make your 3 years in law school and pass the bar exam and actually get to be a lawyer, is that down the road you may have the opportunity to represent yourself in some legal matter where you're somehow in the court system that you're usually a lawyer for. And the adage they

give us is that if you choose to represent yourself you will have a fool for a client. . . .

[T]hat's a pretty good indication of how complicated the law practice is, how complicated, particularly, the trial practice is.

And I've heard one person describe it it's akin as to setting off across a mine field with a lot of mines and thinking you're actually going to be able just to run through there and not touch anything that's going to cause damage to you. . . .

So, again, nothing I'm telling you is telling you you can't represent yourself. But the law does try to have me bring home to someone asserting their right of self-representation that it might not be a very bright decision on their part. Does that make sense to you?

. . . .

[A]nother judge gave a description . . . it was somewhat like going to play golf against Tiger Woods. The average golfer that plays on the weekend occasionally really shouldn't have a realistic expectation that they can beat the Tiger Woods professional.

At each point along the way, Griffis assured the trial court that he understood the dangers and disadvantages of self-representation. *See Cudjo v. State*, 345 S.W.3d 177, 184 (Tex. App.—Houston [14th Dist.] 2011, pet. ref'd). Griffis's complaint was his counsel's failure to ask the questions he wanted of the witnesses. He did not complain about a "breakdown of communication" or "irreconcilable conflict." Out of an abundance of caution, however, the court allowed Griffis to proceed pro se, but only with the availability of assistance.

[Defense counsel] doesn't leave. Instead, he becomes a standby lawyer. Because just as you have the right to make a decision to represent yourself, you have a right to change your mind once and say, "I'm not having as much fun as I thought I was going to have. I want my lawyer back."

*See id.* at 184 n.4.

## C.     Griffis Acting Pro Se

Griffis called seven witnesses and cross-examined each witness for a second time. He represented himself during the charge conference, closing argument, and the punishment phase.

Only prior to the punishment phase closing arguments did Griffis decide to proceed with the remaining trial represented by counsel. *See Faretta*, 422 U.S. at 819–20.

**D.      Analysis**

After the State rested their case-in-chief, a lengthy discussion took place between the trial court and Griffis during which the trial court again assured Griffis that he had the right to represent himself and also fully admonished Griffis on the disadvantages of doing so.  The record indicates that Griffis clearly understood his right of self-representation and the hazards of doing so.  *See id.*; *Cudjo*, 345 S.W.3d at 184.  After breaking for the night, and being admonished again the following morning, Griffis informed the trial court that he desired to proceed pro se.  The record reflects that Griffis knowingly and intelligently made his decision to proceed without being represented by counsel with a full understanding of his right to self-representation and the hazards of representing himself.  He also clearly and unequivocally asserted his right to proceed pro se.  *See Faretta*, 422 U.S. at 819–20; *Cudjo*, 345 S.W.3d at 184.

Griffis's complaints regarding the trial court's allowing him to proceed pro se, without further investigation, are overruled.

## REMAINING ISSUES

Finally, Griffis contends Officer Shafer acted in an objectively unreasonable manner by using his Taser on Griffis in a "tortious manner" and the State improperly withheld exculpatory evidence in the form of a Taser log from an officer that acknowledged using his Taser and another officer that testified he did not use his Taser.

**A.      Evidence Withheld**

A pro se litigant must comply with the rules of evidence and procedure and is not to be granted any special treatment because he has asserted his pro se rights.  *Johnson v. State*, 760 S.W.2d 277, 279 (Tex. Crim. App. 1988).  The Texas Rules of Appellate Procedure require a

litigant, to preserve error for review, to timely object to the alleged error and state the grounds for the ruling sought from the trial court with sufficient specificity to make the trial court aware of the complaint, unless the specific grounds were apparent from the context of the objection. *See* TEX. R. APP. P. 33.1(a)(1)(A); *Dixon v. State*, 2 S.W.3d 263, 265 (Tex. Crim. App. 1998). Griffis, as a pro se appellant, is not entitled to any special treatment and is held to the same standards as licensed attorneys. *See Kindley v. State*, 879 S.W.2d 261, 264 (Tex. App.—Houston [14th Dist.] 1994, no pet.). We overrule this issue.

## B.      Tortious Use of Taser

There is nothing in the record to support that Griffis is entitled to an acquittal based on allegations of tortious use of a Taser. Contrarily, the record supports that the officers' actions were objectively reasonable in light of the facts and circumstances confronting him and the alleged use of his Taser in a tortious manner. More importantly, however, Griffis did not lodge any such objection before the trial court and, therefore, failed to preserve error on this issue. TEX. R. APP. P. 33.1; *see Dixon*, 2 S.W.3d at 265. As to Griffis's arguments regarding the State's failure to disclose favorable evidence, there is no evidence that the alleged missing Taser logs were exculpatory or supported Griffis's argument, and the Taser logs in question are not part of the appellate record.

Although we construe the briefing rules liberally, *see* TEX. R. APP. P. 38.9, Griffis's brief fails to provide any argument supported by references to the appellate record regarding this issue. Accordingly, Griffis's brief fails to sufficiently raise this issue on appeal, and it is overruled. *See* TEX. R. APP. P. 38.1(h).

## CONCLUSION

Having overruled each of Griffis's issues, we affirm the judgment of the trial court.

Patricia O. Alvarez, Justice

PUBLISH