

# Fourth Court of Appeals
## San Antonio, Texas

### MEMORANDUM OPINION

No. 04-12-00815-CR

Reynaldo **FLORES**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 290th Judicial District Court, Bexar County, Texas
Trial Court No. 2012CR1969
Honorable Melisa Skinner, Judge Presiding

Opinion by:     Patricia O. Alvarez, Justice

Sitting:        Marialyn Barnard, Justice
                Rebeca C. Martinez, Justice
                Patricia O. Alvarez, Justice

Delivered and Filed:  June 25, 2014

AFFIRMED

Appellant Reynaldo Flores was convicted by a jury for the offense of assault-family violence and sentenced to ten years' confinement in the Institutional Division of the Texas Department of Criminal Justice and assessed a fine in the amount of $10,000.00. Flores was also convicted of unlawful restraint and sentenced to one-year confinement in the county jail and assessed a fine in the amount of $4,000.00. Flores appeals on multiple grounds. We affirm the trial court's judgment.

## FACTUAL BACKGROUND

Flores and Mayra Rubio first started dating in 2003 and had three children together. On November 18, 2010, Rubio was the victim of an assault-family violence at the hands of Flores. While Flores was incarcerated, Rubio testified that she continued to bring his children to visit him. According to Rubio, she began dating another individual and, at some point in 2011, Flores was released and returned to Honduras. On December 22, 2011, Rubio told the jury she was surprised when Flores appeared at her house. Her children, ages eight, four, and two-years-old, were excited to see their father. Rubio testified that when Flores requested permission to take Neil, their eight-year old son, to visit a friend, she agreed on the condition that Flores return Neil the following day.

On the morning of December 23, 2011, Rubio reported that Flores called and attempted to rekindle their relationship. She testified that she told Flores their relationship was limited to the children and she intended to file papers the following Monday to establish a custody arrangement. She also told Flores that if Neil was not returned by 7:00 p.m., she would contact the police.

Rubio further testified that around mid-day, Flores showed up at her house very upset. He was holding a small knife and instructed Rubio that, if she and the children did not come with him, he was going to hurt Neil. She could see her son crying in the truck, so she took her other children and left with Flores. Rubio testified that Flores grabbed her by the hair and put her in the back of the truck. Flores was very upset, cussing, and told Rubio they were going to Mexico. Rubio testified that she attempted to calm Flores down and suggested they pick up his tools that she had been storing for him.

According to Rubio, Flores drove to the storage facility and she offered to transfer ownership of the storage unit into his name. When they left the storage facility, Neil was in the front seat with Flores, and Rubio and the smaller children were in the backseat. Rubio testified that they were on the highway when Flores pulled over, "He went to the back. He tried to kiss me,

to fondle me. To have sexual encounter with me." She explained that all of this was in front of their children. He climbed on top of her and when she fought back, he started hitting her. As she was fighting Flores, Rubio testified that she was begging Neil to stay looking forward—"Don't look back. Look to the front."

At some point during the struggle, Rubio testified that Flores removed her underwear and hose. She testified to very aggressive digital penetration and that Flores told Rubio they were "going to do it later on." Flores then returned to the front and started driving. Rubio testified she was sure that Flores was going to kill her and the kids, and that "he was totally crazy." Rubio further explained that, out of desperation, she reached to the front and tried to pull the truck's steering wheel to cause an accident, but she was not strong enough. Rubio continued that Flores forced Neil into the back seat and Rubio into the front, where she curled up in a ball as he kept hitting her. In an effort to calm him down, Rubio testified she told Flores that she would go to Mexico with him and they would be a family. As Flores started to calm down, and they continued to drive, Rubio looked for an escape path. When the truck was stopped in heavy traffic, Rubio testified she hit Flores as hard as she could, she turned off the truck, threw her car door open and exited with the three children. The driver of the vehicle immediately to her right saw her and motioned Rubio and the children toward her car. Flores "turned on his truck and he escaped." Flores was arrested at a later date.

San Antonio police officers were called to the scene and Flores was eventually indicted on charges of aggravated kidnapping, sexual assault, and assault-family violence. The jury returned a not-guilty verdict on the sexual assault and aggravated kidnapping counts, but found Flores guilty of the lesser included charges of unlawful restraint and assault-family violence. On December 3, 2012, Flores was sentenced to ten years' confinement in the Institutional Division of the Texas Department of Criminal Justice and assessed a fine in the amount of $10,000.00 on the assault-

family violence count.  He was also sentenced to one-year confinement in the county jail and assessed a fine in the amount of $4,000.00 for the unlawful restraint.

On December 4, 2012, Flores's defense counsel filed a notice of appeal and the trial court appointed appellate counsel.  Between December 17, 2012, and March 20, 2013, Flores filed multiple pro se motions with this court and, on March 25, 2013, Flores filed a pro se motion to dismiss his appointed counsel.  On April 3, 2013, this cause was abated to the trial court for a hearing to determine whether Flores's waiver of counsel was knowingly and intelligently made. *See Faretta v. California*, 422 U.S. 806 (1975).  The trial court entered findings, inter alia, that Flores wished to proceed pro se and that such waiver was voluntarily, knowingly, and intelligently made, and Flores was allowed to represent himself on appeal.  Flores subsequently filed his pro se brief and the State filed its response.

As the State properly contends, Flores's brief is somewhat confusing and appears to lack "clear and concise argument[s] for the contentions made with appropriate citations to the record." *See* TEX. R. APP. P. 38.1(i).  However, where possible, we liberally construe Flores's arguments set forth in his briefing.  *See* TEX. R. APP. P. 38.9 ("Because briefs are meant to acquaint the court with the issues in a case and to present argument that will enable the court to decide the case, substantial compliance with this rule is sufficient.").

For purposes of this opinion, we have combined several of Flores's arguments and will address his arguments under the following topics: (1) family violence finding; (2) use of his prior conviction; (3) presentation of self-defense claim; and (4) claims associated with his defense counsel.

FAMILY VIOLENCE FINDING

Flores contends the trial court erred in allowing the jury to convict on family violence because he is neither married to the victim nor related under sections 71.003 and 71.005 of the Texas Family Code. TEX. FAM. CODE. ANN. §§ 71.003, 71.004 (West 2014). We disagree.

**A.     Family Violence Defined under the Texas Penal Code and Texas Family Code**

Flores was charged with assault under section 22.01(a)(1) of the Texas Penal Code which provides "[a] person is commits [assault] if the person: (1) intentionally, knowingly, or recklessly causes bodily injury to another, including the person's spouse." TEX. PENAL CODE ANN. § 22.01(a)(1) (West Supp. 2014). Flores's offense, however, was enhanced under section 22.01(b)(2) which provides:

> An offense under Subsection (a)(1) is a Class A misdemeanor, except that the offense is a felony of the third degree if the offense is committed against:
> . . . .
>    (2) a person whose relationship to or association with the defendant is described by Section . . . 71.003, Family Code, if:
>
>      (A) it is shown on the trial of the offense that the defendant has been previously convicted of an offense . . . against a person whose relationship to or association with the defendant is described by Section . . . 71.003, Family Code;

*Id.* § 22.01(b)(2)(A). Family Code section 71.003's definition of "family" includes "individuals who are the parents of the same child." TEX. FAM. CODE ANN. § 71.003 (West 2014). The record is clear that Flores and Rubio had three children together. Thus, the assault was committed against a person whose association with Flores is defined by section 71.003. *Id.* Additionally, Flores was convicted on April 18, 2011, with felony assault-family violence as described by section 22.01(b)(2)(A). TEX. PENAL CODE ANN. § 22.01(b)(2)(A). We, therefore, overrule this issue.

**B.**     *Expresio Un Est Exclusio Alteris*

Flores next contends that under the principle known as *Expresio Un Est Exclusio Alteris* the State cannot demonstrate Flores was a family or household member of Rubio's. *Expresio Un Est Exclusio Alteris* means "the expression of one thing is the exclusion of another." *Williams v. State*, 965 S.W.2d 506, 507 (Tex. Crim. App. 1998). "[The principle] is a product of logic and common sense, expressing the learning of common experience that when people say one thing they do not mean something else." *Id.* Because we have already determined Rubio was a family member under section 71.003 of the Texas Family Code, we overrule this issue as well. *See* TEX. FAM. CODE ANN. § 71.003.

**C.     Use of Flores's Prior Conviction**

Flores next contends the State breached article 36.01 of the Texas Code of Criminal Procedure by reading the portion of the indictment that recited Flores's previous conviction to inflame the minds of the jury. *See* TEX. CODE CRIM. PROC. ANN. art. 36.01 (West 2006) ("When prior convictions are alleged for purposes of enhancement only and are not jurisdictional, that portion of the indictment or information reciting such convictions shall not be read until the hearing on punishment is held as provided in Article 37.07."). We disagree.

Article 36.01 specifically allows the State to read the indictment at the beginning of trial, including the prior convictions that are jurisdictional. *Hollen v. State*, 117 S.W.3d 798, 802 (Tex. Crim. App. 2003); *see also Lafayette v. State*, No. 06-02-00213-CR, 2003 WL 22902962, at *1 (Tex. App.—Texarkana Dec. 9, 2003, no pet.) (mem. op., not designated for publication) ("[I]t was proper for the State to read the indictment, including Lafayette's prior family violence conviction which provided felony jurisdiction for the current charge."); *Zavala v. State*, No. 03-05-00051-CR, 2007 WL 135979, at *1 (Tex. App.—Austin Jan. 22, 2007, no pet.) (mem. op., not designated for publication) (same). Accordingly, because the State enhanced the assault charge

with a prior family violence assault, the prior conviction was jurisdictional and properly read before the jury.

## B.    Variance between Indictment and Judgment

Flores contends Count III of the indictment alleges that he struck and scratched Rubio with his hand, but the judgment reflects "choking-strangulation," which constitute the allegations contained in his 2011 conviction.

Count III of the indictment provides as follows:

on or about the 23rd day of December, 2011, Reynaldo Flores, hereinafter referred to as defendant, did intentionally, knowingly and recklessly cause bodily injury to Mayra Rubio, a member of the defendant's family or household, hereinafter referred to as complainant, by striking the complainant with the hand of the defendant and by scratching the complainant with the hand of the defendant;

Similarly, the judgment, entered on December 3, 2012 provides:

We, the jury, find the defendant, Reynaldo Flores, guilty of [the] felony assault against a member of the defendant's family or household as charged in Count III of the indictment.

The only reference to choking or strangulation was in the enhancement paragraph which provided Flores "was convicted of the offense of Assault-Family-Choking/Strangulation, an offense against a member of the defendant's family." This allegation was used for enhancement purposes and was not the current offense charge in Count III of the State's indictment or for which Flores was found guilty in the judgment. We, therefore, overrule this issue.

## C.    Double Jeopardy Claims

Flores further contends the use of his prior conviction violated his rights against double jeopardy. The Fifth Amendment guarantee against double jeopardy protects a defendant against multiple punishments for the same offense. *Hutchins v. State*, 992 S.W.2d 629, 631 (Tex. Crim. App. 1999) (citing *Illinois v. Vitale*, 447 U.S. 410, 415 (1980)). Double jeopardy does not apply to noncapital sentencing enhancements because an enhanced sentence imposed on a persistent

offender is not a new jeopardy or an additional penalty for the earlier offense. *Monge v. California*, 524 U.S. 721, 728 (1998); *see also Cherry v. State*, 447 S.W.2d 154, 157–58 (Tex. Crim. App. 1969) (explaining that enhancement penalty statutes do not result in double jeopardy violations). Here, because Flores's prior conviction was used to enhance his punishment in the current prosecution, it did not "constitute a second prosecution or punishment for the prior offense for double jeopardy purposes." *State v. Cagle*, 77 S.W.3d 344, 347 (Tex. App.—Houston [14th Dist.] 2002, pet. ref'd). Accordingly, this issue is overruled.

## SELF-DEFENSE

Flores next argues the trial court "breached articles 9.22 and 9.31 necessity and self-defense. Due [to] the clear ability of Mr. Flores to avoid a major accident or fatality, immediately necessary due to the circumstance." *See* TEX. PENAL CODE ANN. §§ 9.22, 9.31.

### A.    Necessity

Necessity is a statutory defense that exonerates a person's otherwise illegal conduct. *See* TEX. PENAL CODE ANN. § 9.22. Conduct is justified by necessity if:

> (1)    the actor reasonably believes the conduct is immediately necessary to avoid imminent harm;
>
> (2)    the desirability and urgency of avoiding the harm clearly outweigh, according to ordinary standards of reasonableness, the harm sought to be prevented by the law proscribing the conduct; and
>
> (3)    a legislative purpose to exclude the justification claimed for the conduct does not otherwise plainly appear.

*Id.* The defendant has the initial burden of producing evidence regarding the necessity defense. *Id.* § 2.03(c). If the defendant adduces evidence, regardless of source and strength, raising every element of the defense, then the burden shifts to the State to disprove the defense beyond a reasonable doubt. *Id*. § 2.03(d); *Thomas v. State*, 678 S.W.2d 82, 84 (Tex. Crim. App. 1984).

**B.      Court's Charge**

The court's charge provided for the self-defense necessity issue about which Flores now complains.

> Now, if you find from the evidence beyond a reasonable doubt that on the occasion in question, the defendant did hold Mayra Rubio back from leaving the vehicle, but you further find from the evidence, or you have a reasonable doubt thereof, that at the time of such conduct by the defendant, if any, the defendant reasonably believed that such conduct on his part was immediately necessary to avoid imminent harm, to wit, bodily injury to Mayra Rubio upon jumping out into traffic on the highway, and that the desirability and urgency of avoiding bodily injury to Mayra Rubio clearly outweighed, according to ordinary standards of reasonableness, the harm sought to be prevented by the law proscribing the conduct of defendant holding Mayra Rubio back from leaving the vehicle, then you will acquit the defendant and say by your verdict "not guilty" to the lesser included offense of unlawful restraint in Count I.

**C.      Analysis**

According to section 9.22, and the charge provided to the jury, this court must determine whether the evidence is sufficient to establish whether Flores believed the conduct was immediately necessary to avoid imminent harm. *See* TEX. PENAL CODE ANN. § 9.22. Whether the accused's belief is reasonable is a question of fact and should be viewed from the accused's standpoint at the time he acted. *See Fitzgerald v. State*, 782 S.W.2d 876, 885 (Tex. Crim. App. 1990). "'Reasonable belief' means a belief that would be held by an ordinary and prudent man in the same circumstances as the actor." *Pennington v. State*, 54 S.W.3d 852, 857 (Tex. App.—Fort Worth 2001, pet. ref'd) (citing TEX. PENAL CODE ANN. § 1.07(a)(42) (West Supp. 2010)).

Our analysis includes a review of the record, including the witnesses that saw Rubio exit Flores's vehicle, and "defer[ence] to the jury's credibility and weight determinations because the [trier of fact] is the sole judge of the witnesses' credibility and the weight to be given their testimony." *Brooks v. State*, 323 S.W.3d 893, 899 (Tex. Crim. App. 2010); *accord Jackson v. Virginia*, 443 U.S. 307, 326 (1979). Based on the testimony of Rubio and the other witnesses, the

jury could reasonably believe that Flores's conduct was not immediately necessary to avoid imminent harm. We, therefore, overrule this issue.

CLAIMS AGAINST DEFENSE COUNSEL

Flores asserts numerous claims against his defense counsel, most of which are more properly addressed as part of his ineffective assistance of counsel claims. We, therefore, join all remaining claims asserted against his defense counsel as part of our analysis of whether Flores received effective assistance of counsel.

## A.    Review Limited by the Appellate Record

In order to establish that trial counsel rendered ineffective assistance, Flores must "establish two components by a preponderance of the evidence: deficient performance of trial counsel and harm resulting from that deficiency that is sufficient to undermine the confidence in the outcome of the trial." *Ex parte Moore*, 395 S.W.3d 152, 157 (Tex. Crim. App. 2013) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)); *accord Menefield v. State*, 363 S.W.3d 591, 593 (Tex. Crim. App. 2012). To establish the first prong, deficient performance, Flores must prove that his attorney's performance "'fell below an objective standard of reasonableness' under prevailing professional norms and according to the necessity of the case." *Ex parte Moore*, 395 S.W.3d at 157 (quoting *Strickland*, 466 U.S. at 687–88). To establish harm, Flores must "demonstrate that he was prejudiced by his attorney's performance or that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Id.* at 158 (quoting *Strickland*, 466 U.S. at 694).

"An appellate court looks to the totality of the representation and the particular circumstances of each case in evaluating the effectiveness of counsel." *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999). "There is a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance." *Id.* Therefore, Flores "'must

overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.'" *Ex parte Moore*, 395 S.W.3d at 157 (quoting *Strickland*, 466 U.S. at 689).

"A substantial risk of failure accompanies an appellant's claim of ineffective assistance of counsel on direct appeal." *Thompson*, 9 S.W.3d at 813. "In the majority of instances, the record on direct appeal is simply undeveloped and cannot adequately reflect the failings of trial counsel." *Id.* "[T]rial counsel should ordinarily be afforded an opportunity to explain his actions before being denounced as ineffective." *Rylander v. State*, 101 S.W.3d 107, 111 (Tex. Crim. App. 2003). In the absence of a developed record, we will not "speculate as to the reasons why trial counsel acted as he did, rather [we] must presume that the actions were taken as part of a strategic plan for representing the client." *Rodriguez v. State*, 336 S.W.3d 294, 302 (Tex. App.—San Antonio 2010, pet. ref'd). Moreover, an "appellate court should not find deficient performance unless the challenged conduct was "'so outrageous that no competent attorney would have engaged in it.'" *Menefield*, 363 S.W.3d at 593 (citing *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005)).

Here, the record does not contain any evidence of defense counsel's reasoning or lack thereof. *See Rodriguez*, 336 S.W.3d at 302.

**B.      Failure to Preserve Error before the Trial Court**

As the State points out, the errors raised by Flores on appeal were not raised before the trial court. To preserve a complaint for appellate review, the party must object to a trial judge's alleged error during the trial. *See* TEX. R. APP. P. 33.1(a)(1). The record must show the complaining party made "a timely request, objection, or motion" to the trial court that specifically stated the party's complaint. *Id.* 33.1(a)(1); *Garza v. State*, 126 S.W.3d 79, 81–82 (Tex. Crim. App. 2004). With that caveat, we look at each of the evidentiary issues raised by Flores.

*1.     Texas Code of Criminal Procedure article 38.17*

Flores contends that article 38.17 requires two eyewitnesses to convict. TEX. CODE CRIM. PROC. ANN. art. 38.17 (West 2005) ("In all cases where, by law, two witnesses, or one with corroborating circumstances, are required to authorize a conviction, if the requirement be not fulfilled, the court shall instruct the jury to render a verdict of acquittal, and they are bound by the instruction."). Flores's argument fails for two reasons: (1) article 38.17 is inapplicable to this case because none of the indicted offenses require a conviction, as a matter of law, supported by "two witnesses, or one with corroborating circumstances," e.g., articles 38.14 (accomplice testimony), 38.141 (testimony of a person acting covertly for a law-enforcement agency who is not a licensed peace officer), 38.15 (treason cases), 38.18 (perjury cases), and (2) article 38.17 pertains to the jury charge. *Id.* §§ 38.141, 38.15, 38.17, 38.18. Flores has not raised a jury-charge issue as to his 38.17 complaint. We overrule this issue.

*2.     Texas Code of Criminal Procedure article 38.23*

Flores contends the State breached article 38.23 by admitting false evidence from a previous illegal conviction to inflame the minds of the jurors. *See* TEX. CODE CRIM. PROC. ANN. art. 38.23(a) (West 2005) ("No evidence obtained by an officer or other person in violation of any provisions of the Constitution or laws of the State of Texas, or of the Constitution or laws of the United States of America, shall be admitted in evidence against the accused on the trial of any criminal case."). Because we have already determined the evidence of Flores's previous conviction was properly before the jury, we overrule this issue.

*3.     Texas Rules of Evidence 601, 603, 607, and 608*

Flores next argues the State breached several rules of evidence by fabricating witness testimony, manipulating false witnesses, and using the crimes of false witnesses to coerce them to testify against Flores. Although Flores makes a significant number of challenges to the witnesses

and the basis of their testimony, there is no corresponding evidence to substantiate his claims. Our law "imposes . . . [a] burden on the appealing party to make a record demonstrating that error occurred in the trial court." *Davis v. State*, 345 S.W.3d 71, 77 (Tex. Crim. App. 2011); *see* TEX. R. APP. P. 33.1(a)(1), (2)(A). "An appellate court may not consider factual assertions that are outside the record." *Whitehead v. State*, 130 S.W.3d 866, 872 (Tex. Crim. App. 2004). Here, Flores's complaints are just that, mere assertions in a brief, unsupported by the record. *Id.* Accordingly, we overrule these issues.

### 4.    *Lesser Included Offenses*

Flores next contends his defense counsel tried to get Flores convicted of the lesser offense of kidnapping. Once again, Flores's assertions are not supported by the record. *Id.* Ironically, Flores's defense counsel argued before the jury that Flores was not guilty of any of the charges, and successfully obtained an acquittal on both the aggravated kidnapping and the sexual assault. We consider the fact that Flores was found guilty of the lesser included misdemeanor unlawful restraint as evidence that his defense counsel was successfully advocating on his behalf. We overrule this issue.

### 5.    *Miscellaneous Bad Acts by Defense Counsel*

Flores asserts a plethora of claims regarding his defense counsel's actions during the trial, these include: (1) defense counsel's comments that Flores's rights were impinged by his immigration status; (2) defense counsel's failure to report the prosecutor to the State Bar; (3) defense counsel attempted to coerce Flores not to testify in his own defense; and (4) defense counsel and the State were joined in a conspiracy to convict Flores. Once again, Flores's allegations are simply that, mere allegations unsupported by anything contained with the court's record. *See id.* Accordingly, we overrule each of these issues.

### 6.    *Failure to Subpoena Witnesses*

Lastly, Flores argues his defense counsel erred in failing to subpoena two witnesses—Jose Siller and Mira Cruz. The failure to subpoena witnesses does not constitute ineffective assistance of counsel without a showing that the witnesses were available and that their testimony would have benefited appellant. In *Perez v. State*, 310 S.W.3d 890, 894 (Tex. Crim. App. 2010), the Court of Criminal Appeals explained, "the 'failure to call witnesses at the guilt-innocence and punishment stages is irrelevant absent a showing that such witnesses were available and appellant would benefit from their testimony.'" (quoting *King v. State*, 649 S.W2d 42, 44 (Tex. Crim. App. 1983)). Without any evidence to substantiate what, if anything, the witnesses would have provided, we cannot say Flores would have benefitted from their testimony. This issue is overruled.

Based on the limited record presented on appeal, and each of the reasons stated above, we overrule Flores's remaining claims against his defense counsel and his claims of ineffective assistance of counsel.

### CONCLUSION

Having overruled each of Flores's issues raised on appeal, we affirm the judgment of the trial court.

Patricia O. Alvarez, Justice

DO NOT PUBLISH